**In re Kenneth James RIDEOUT and Cari Collins Rideout, Debtors.**

**Bankruptcy No. 85–00177.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 11, 1987.

Buswell Roberts, Toledo, Ohio, Gene Graves, Oak Harbor, Ohio, for Anita and Charles Graves.

Louis Hattner, Toledo, Ohio, for debtors.

Howard H. Hershman, Toledo, Ohio, for Farmers Sav. Bank.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on the Election made by Charles and Anita Hahn pursuant to 11 U.S.C. § 1111(b). The Election was originally made orally at the Hearing on Approval of Disclosure Statement. Written notice of the Election was filed the same day. A Hearing was held on this matter, at which time both parties called their witnesses and presented the materials which they wished the Court to consider in rendering its decision. The parties requested the opportunity to present further written arguments. Those arguments were filed within the time frame set by the Court. The Court has reviewed the testimony, exhibits, and the arguments of counsel, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that the § 1111(b) Election should be allowed.

## FACTS

The Debtors, Kenneth and Cari Rideout, filed for relief under 11 U.S.C. Chapter 11 on March 18, 1985. The Rideouts do business as "Rideout Farms", and were also formerly doing business as "Rideout Power Equipment", an Ohio corporation. The Debtor's farm consists of approximately 80 acres in Benton Township and 80 acres in Clay Township, both in Ottawa County, Ohio.

On January 23, 1987, the Defendant-Debtors filed an amended Disclosure State- ment, and with it, an amended proposed Plan of Reorganization. A Hearing was held on February 12, 1987, and the Disclosure Statement was approved without objection. At the Hearing, counsel for Charles and Anita Hahn made an oral Motion to the Court, pursuant to Bankruptcy Rule 3014, electing to be treated as secured under 11 U.S.C. § 1111(b). A written notice of the Election was filed the same day. The Debtors filed an Objection to the § 1111(b) Election on February 20, 1987, asserting that the Hahns' interest in the property was of "inconsequential value", and therefore the Hahns were precluded from making the Election by § 1111(b)(1)(B)(i).

On March 11, 1987, a Hearing was held on the Hahns' § 1111(b) Election. The Hahns' claim against the Debtor is by virtue of a certificate of judgment filed in Ottawa County based on a judgment obtained against the Debtors. Under Ohio law, the certificate of judgment creates a lien which only attaches to the land and fixtures of the Debtor. At the Hearing, counsel for the Hahns argued that certain liens of Farmers Savings Bank were invalid, and that the Hahns' lien was, as a consequence, entitled to a higher priority. Creditors' counsel stipulated that any determination of the status of the liens would be limited in its application to the § 1111(b) valuation question only. Debtors' counsel objected to opposing counsel's arguments on the grounds that an § 1111(b) Hearing was not the proper forum to contest the validity and priority of liens. It should be noted that it appears Farmers Savings Bank did not receive notice that the Election Hearing would include an attack on the status of their liens, and they did not attend the Hearing.

Both parties presented appraisal testimony as to the value of the property owned by the Debtors. The appraiser of the Debtors valued the property at Three hundred and eleven thousand dollars ($311,000.00), without certain grain storage bins which the Debtors contend are not fixtures. The appraiser of the Hahns valued the property, with the grain storage bins, at Five

hundred and twenty-two thousand dollars ($522,000.00). The Hahns' appraiser placed a higher per acre value on the farmland, valued the Debtor's residence higher, and appraised the land in the immediate area of the residence separately. The grain bins, and another farm building, were appraised at approximately One hundred and twenty-five thousand dollars ($125,000.00). The Debtors' Brief shows that the total amount of the liens, excluding the lien held by the Hahns, is Three hundred and fifty-seven thousand seven hundred and twenty-five dollars ($357,725.00).

Testimony on the grain storage bins was given by one of the Debtors, Kenneth Rideout. He testified that it was his intention that the storage bins be treated as personal property readily removable from the land. He further testified that the storage bins were "easily removable" and that the number of bins was excessive for the acreage and potential yield. Upon inquiry of the Court, Mr. Rideout admitted that the bins did have concrete foundations. The Debtors cite *Teaff v. Hewitt* 1 Ohio St. 511 (1853) for the proposition that the question of whether or not an item should be considered a fixture is generally controlled by the intention of the parties.

It should be noted that the Debtor's Plan of Reorganization proposes to treat the claim of the Hahns as undersecured. As an undersecured creditor, the Hahns would receive a 2% payment on their claim over a two year period. The Hahns are the only creditor so classified. Unsecured creditors with claims over One thousand dollars ($1,000.00) would receive a 10% payment over five years.

## LAW

### I

The first issue the Court must address is the Debtors' Objection to any determination as to the validity or priority of liens. Debtors' counsel's Objection is based on Bankruptcy Rule 7001(2), which states in pertinent part:

An adversary proceeding is governed by the rules of this Part VII. It is a proceeding in a bankruptcy court ... (2) to determine the validity, priority, or extent of a lien or other interest in property other than a proceeding under Rule 4003(d) ...

■ Under Bankruptcy Rule 7001, a proceeding to determine the "validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Pursuant to Bankruptcy Rule 7003, which makes Rule 3 F.R.Civ.P. applicable to adversary proceedings, an adversary proceeding is commenced by the filing of a complaint. In the case at bar, no complaint has been filed. Counsel for the Hahns seeks to have the Court determine the status of the Hahns' lien within the context of a § 1111(b) Election. Even though the Hahns' counsel has stipulated that the determination of the relative status of the liens would not be binding beyond the purposes of the Election under § 1111(b), such determination by the Court would not be proper in the instant case. *Connelly v. Marine Midland Bank, N.A.,* 61 B.R. 748 (W.D.N.Y.1986); *In re Palombo Farms of Colorado, Inc.,* 43 B.R. 709 (Bankr.D.Colo. 1984); *In re Breaux,* 55 B.R. 613 (Bankr.M. D.Ala.1985); *In re Colrud,* 45 B.R. 169 (Bankr.D.Alaska 1984).

First, it must be recognized that Courts have waived the procedural requirements of Rule 7001 in some cases. *See In re Jablonski,* 70 B.R. 381, 385 (Bankr.E.D.Pa. 1987) (The Court observed that the proper procedural device to challenge the validity of a lien was an adversary proceeding, rather than a Motion. But, the Court allowed the case to reach merits because the mortgagee, whose lien was in question, had answered and stipulated to a record upon which the issue could be decided.); *In re Henning,* 69 B.R. 348, 349 n. 2 (Bankr.N.D. Ill.1987) (There were no objections to the Court ruling on the priority of certain liens, and both lien holders were represented at the Hearing.); *In re Sheehan* 38 B.R. 859, 863 (Bankr.S.D.1984) (The Court stated that the waiver of the requirements of 7001(2) was "both fair and expedient as long as all potential parties are given the opportunity to resist the motion and participate in any hearings ...").

In the case at bar, it appears that Farmers Savings Bank did not receive notice that their liens would be subject to attack in the § 1111(b) Hearing. Therefore, all "potential parties" were not given the opportunity to participate. Any records, or knowledge, which was in the exclusive control of Farmers Savings Bank could not be brought to bear in defense of the validity of the liens.

The primary concern of the Court is not, however, with any possible prejudice to Farmers Savings Bank. Counsel for the Hahns has stipulated that any decision of the Court on the validity of the Bank's lien would only be used for purposes of the § 1111(b) issue. It is the Debtors who are the ones at risk in this matter. If the Court found that the Hahns had a substantial interest in the Debtors' property based on the invalidity of the Bank's mortgages, nothing would prevent Farmers Savings Bank from filing an adversary complaint, presenting their evidence, and having this Court find the mortgages valid. This could leave the Debtors with the Hahns treated as a secured recourse creditor under § 1111(b), and Farmers Savings Bank with valid, enforceable mortgages. One of the policies behind Rule 7001 seems to be to prevent such "whipsawing" by bringing in all parties in interest. Moreover, the Debtors may themselves, at some point in time, wish to contest the validity of Farmers Savings Bank's lien. By not requiring the Hahns to file an adversary complaint, giving the Debtors "all the protections attendant thereto", [*In re Taylor*, 39 B.R. 31, 33 (Bankr.N.D.Ohio 1984).] the Court could be forcing the Debtors to research and present arguments they might later assail in other litigation.

For these reasons, particularly the risk of inconsistent judgments against the Debtors, the Court will not consider evidence introduced by the Plaintiff relative to the validity, priority, or extent of Farmers Savings Bank's interest in the Debtors' property. The Plaintiffs should have filed an adversary complaint on the heels of their Election if they wished to contest the Bank's mortgages.

## II

It might be argued that a similar Rule 7001 problem is presented by the Debtors' assertion that the grain storage bins are not fixtures. If the storage bins are found to be fixtures, then the Hahns' judgment lien would attach to the bins. Thus, the argument might continue, the fixture issue should also be brought as an adversary action because it is, in actuality, an action to determine the extent of the Hahns' lien. It should be noted that, unlike the question of the validity of the mortgages, the Debtors have not raised any objection to the consideration of the fixture issue. In fact, most of the testimony on the subject was by the Debtor. However, there does not appear to be sufficient evidence before the Court upon which to base a reasoned judgment.

Debtor's counsel has cited *Teaff v. Hewitt*, 1 Ohio St. 511 (1853) for the proposition that the intention of the parties is the controlling factor in any decision on whether or not an item of property should be considered a fixture. A review of the case law reflects that this is one of the factors to be considered by the Court in making such a determination. However, it is not the only factor the Court must consider. Further, the only testimony on intent was given by Kenneth Rideout, an interested party. Other testimony by Mr. Rideout, such as the fact that the storage bins have concrete foundations, would weigh against a finding that they are personal property. Therefore, because it does not appear that a determination of the nature of the storage bins is necessary for this decision on whether to allow the Hahns to Elect under § 1111(b), and because there is insufficient evidence before the Court to support a reasoned determination of the issue, the Court will decline the opportunity to consider whether any or all of the storage bins are fixtures.

## III

The Hahns have Elected to have their claim treated as secured under 11 U.S.C. § 1111(b), which states in pertinent part:

(b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; ...

(B) A class of claims may not elect application of paragraph (2) of this subsection if—

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; ...

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

The § 1111(b) Election is not available in two situations. If the secured creditor's collateral is of inconsequential value, the creditor cannot Elect. The Election is also not available if the secured creditor has recourse against the Debtor and the property is to be sold under the terms of the Plan, or in accordance with 11 U.S.C. § 363. *Matter of Greenland Vistas, Inc.*, 33 B.R. 366 (Bankr.E.D.Mich.1983); *In re Hallum*, 29 B.R. 343 (Bankr.E.D.Tenn.1983). In the present case, the property will not be sold. Therefore, the issue before the Court is whether the Hahns' interest in the Debtors' real estate is "inconsequential".

█ Both parties have presented expert testimony as to the value of the subject real estate. The appraiser of the Hahns valued the property, with the grain storage bins, at Five hundred and twenty-two thousand dollars ($522,000.00). The grain bins, and another farm building, were appraised at approximately One hundred twenty-five thousand dollars ($125,000.00). Therefore, the appraised value of the property, without the storage bins, would be Three hundred and ninety seven thousand dollars ($397,000.00). The Debtors' Brief shows that, excluding the Hahns' lien, the total amount of the liens, for which claims have been filed, is Three hundred and fifty-seven thousand seven hundred and twenty-five dollars ($357,725.00). The equity to which the Hahns lien could attach would be Thirty-nine thousand two hundred and seventy-five dollars ($39,275.00).

The appraiser of the Debtors valued the property at Three hundred and eleven thousand dollars ($311,000.00) without the grain storage bins. Using the Debtors' appraisal, the other liens exceed the value of the property by Forty-six thousand seven hundred and twenty-five dollars ($46,725.00).

After consideration of the appraisals and the comparables, as well as the purposes and policies underlying § 1111(b), the Court finds that the collateral's value is not inconsequential. The Court agrees with the Hahns' appraiser that the value of the property exceeds Three hundred and fifty-seven thousand seven hundred and twenty-five dollars ($357,725.00). Therefore, the § 1111(b) Election should be allowed.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Hahns' Election under 11 U.S.C. § 1111(b) is ALLOWED.