**In re Victor Wade HOWELL and Brenda F. Howell, d/b/a, Howell Construction Company, Seed & Farm Supply, Debtors.**

**Bankruptcy No. 86–01210–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 30, 1988.

Ronald Bergwerk, Jacksonville, Fla., for debtor.

Earl Barker, Jacksonville, Fla., for South Atlantic Production Credit Ass'n.

Larry E. Denney, Jacksonville, Fla., for U.S.A. Business Ass'n.

Lori P. Hughes, Jacksonville, Fla., for NCNB Nat'l Bank of Fla.

MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter came before the Court upon the Debtors' Motion for Cramdown against NCNB National Bank of Florida ("NCNB") pursuant to § 1129(b) of the Bankruptcy Code (the "Code").  A hearing on the motion was held on March 10, 1988.  Based upon the evidence presented and the argument of counsel, the Court finds that the Second Modification to the Debtors' Amended Chapter 11 Plan does not comply with the applicable provisions of the Code and the Debtors' Motion for Cramdown will therefore be denied.

*Facts*

On October 16, 1986, the Debtors filed a voluntary petition for reorganization under Chapter 11 of the Code.  NCNB filed a proof of claim in the Debtors' chapter 11

case asserting a claim in the amount of $24,981.02.

On February 9, 1987, NCNB initiated an adversary proceeding pursuant to § 523 of the Code by filing a complaint against Victor Wade Howell ("Howell") to determine the dischargeability of a debt owed by Howell to NCNB. Specifically, NCNB alleged that Howell converted funds in the amount of $19,904.38 from Pan American Bank, N.A., the predecessor in interest to NCNB, and that such conversion constituted a "willful and malicious injury" under § 523(a)(6).

On August 13, 1987, a trial was held on NCNB's complaint and a final judgment was entered on October 19, 1987 in favor of NCNB by which the sum of $21,266.98 was declared to be nondischargeable under § 523(a)(6) of the Code.

The Debtors filed an Amended Chapter 11 Plan (the "Plan") and Disclosure Statement on July 17, 1987. NCNB filed a ballot as a class 12 claimant accepting the Plan.[1]

On February 29, 1988, the Debtors filed (i) a second modification to their Plan (the "Modified Plan") and (ii) a motion for cramdown of NCNB pursuant to § 1129(b) of the Code. The Modified Plan contained a provision providing for monthly payments of $300 to NCNB on the $21,266.98 nondischargeable debt until such debt is paid in full. The Debtors admit that their intent in including this provision in the Modified Plan was to preclude NCNB from attempting to execute or collect on its nondischargeable judgment debt after the confirmation of their plan.[2]

At a hearing held on March 10, 1988, NCNB objected to the confirmation of the Modified Plan on the grounds that its pro-posed treatment of NCNB's claim did not comply with the provisions of the Code. Specifically, NCNB objected to the confirmation of the Modified Plan to the extent the Debtors intended to restrict NCNB's right to execute or collect on its nondischargeable judgment debt free from the injunctive and other provisions of the plan. The Debtors then invoked their cramdown motion against NCNB in an attempt to have its Modified Plan confirmed.

## Discussion

Section 1129(a)(1) of the Code permits a court to confirm a plan only if it complies with the applicable provisions of the Code. Section 1123 of the Code specifies what provisions must be included in a plan of reorganization and what provisions may be included in a plan. Among the provisions which may be included is "any other appropriate provision not inconsistent with the provisions of this title". 11 U.S.C. § 1123(b)(5).

This Court concludes for the reasons stated below that the provision in the Modified Plan which purports to bind NCNB to monthly payments of $300.00 on the $21,266.98 nondischargeable debt does not comply with the applicable provisions of the Code and that, although NCNB is entitled to participate in the distribution under the plan to unsecured creditors, it also has the right to execute or collect on its nondischargeable judgment debt free from the injunctive and other provisions of the plan.

Although the provisions of the Code do not expressly state the manner in which a creditor with a nondischargeable debt may be treated in a plan of reorganization, this Court concludes from an analysis of

---

1. The Plan classified general unsecured claims as Class 12 claims. Pursuant to the provisions of the Plan, Class 12 claimants are to receive a pro rata share of a $5,000 lump sum distribution to be made within 60 days after the effective date of the plan. Thereafter, $2,000 per year will be distributed pro rata among the creditors in this class.

2. Article VIII of the Modified Plan provided as follows:

NCNB National Bank of Florida has obtained a judgment in the amount of $21,266.98, which amount has been declared to be nondischargeable. In addition to the rights of this creditor to participate in the plan as a Class 12 creditor, the debtor shall make additional distribution on this claim according to the following schedule:
Months 1–20          $300 per month
Months 20 onward $500 per month
Said distribution to continue until the claim has been paid in full.

the statutory provisions and legislative history of the Code that a creditor holding a nondischargeable debt is entitled to participate in any distribution made under a plan to similarly situated creditors and, in addition, such creditor may execute or collect on the balance of its nondischargeable debt without regard to the discharge provisions of the plan or the Code.

Section 1141(d)(2) of the Code provides that "[t]he confirmation of a plan of reorganization does not discharge an individual debtor from any debt excepted from discharge under § 523." Under Section 1141(a) of the Code, the holders of nondischargeable debts identified in § 1141(d)(2) are expressly excepted from those persons who are bound by the provisions of a confirmed plan. Section 1141(a) provides, in part, that:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, ... (emphasis added).

Accordingly, there can be no doubt that a creditor who has a debt excepted from discharge under § 523 cannot be bound by the provisions of a confirmed plan.

Conversely, although § 1141(a) provides that a creditor with a nondischargeable debt is not bound by the provisions of a confirmed plan, nothing in this section or in any other provision of the Code requires or suggests that such a creditor is precluded from participating in any distribution made under the plan to similarly situated creditors. In fact, the conclusion to be drawn from the statutory analysis, legislative history and case law is just the opposite.

Pursuant to § 1123(a)(4) of the Code, each claim or interest of a particular class must receive the same treatment under a plan. Section 1122(a) of the Code prohibits the placing of substantially similar claims in separate classes.

> [T]he reasonable inference [of § 1122(a)] is that Congress intended ... that all unsecured claims of a similar nature be placed in the same class. *In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999, 1000 (M.D.Fla.1984).

*See also, In re S & W Enterprise*, 37 B.R. 153 (Bankr.N.D.Ill.1984); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bankr.S.D.N.Y.1983)

Accordingly, the plain language of §§ 1122(a) and 1123(a)(4) suggests that unsecured creditors holding nondischargeable debts are to be classified and treated the same as other unsecured creditors. Indeed, if Congress intended for the holders of nondischargeable claims to be excluded from distributions under a confirmed plan, it could have easily done so. *In re Johns-Manville Corp.*, 53 B.R. 346 (Bankr.S.D.N.Y.1985) ("legislatures know how to limit a provision when they desire to do so").

The legislative history of § 501(c) of the Code, which permits a debtor to file a proof of claim on behalf of a creditor under certain circumstances, also supports the view that a creditor with a nondischargeable debt is entitled to participate in the distribution of the debtor's estate.

> The purpose of permitting the debtor or the trustee to file is to protect the debtor in those situations in which the creditor's claim is nondischargeable. This is because the debtor, after receiving a discharge, still remains liable for the nondischargeable debts owed to creditors who did not participate in the distribution prior to the closing of the debtor's case. Since there would be no distribution on the claim of a creditor who does not file a proof of claim, the debtor would have a greater debt to repay after the closing of the case than if the claim were paid in part or in full in the case or under the plan. *Collier on Bankruptcy*, ¶ 501.03 (15th ed. 1985) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787).

In addition, the legislative history relating to the nondischargeability and priority of tax claims also assumes that a creditor with a nondischargeable debt is entitled to participate in the distribution under a plan

and to collect the balance of the debt outside the plan.

The bankruptcy policy for this treatment [allowing distribution to a creditor holding a nondischargeable debt] is that it is not fair to penalize [other] creditors of the debtor by paying out of the "pot" of assets in the estate ... liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these [liabilities]. Therefore, these [liabilities] have no priority in payment from the estate but would survive as continuing debts after the case. S.Rep. No. 1106, 95th Cong., 2d Sess. 22 (1978).

Although there are only a limited number of cases which have addressed the right of a creditor holding a nondischargeable debt to receive a distribution under a plan or from a bankruptcy estate, each of these cases support the conclusion of this Court. *See, In re Edwards*, 74 B.R. 661, 665 (Bankr.N.D.Ohio 1987); *In re Handy*, 41 B.R. 172, 173 n. 1 (Bankr.E.D.Va.1984); *In re Ryan*, 32 B.R. 794, 797 (Bankr.D.Md. 1983).

The Supreme Court case of *Friend v. Talcott*, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913), which addressed the analogous provisions of the Bankruptcy Act, is of particular significance. In *Friend*, a creditor with a nondischargeable claim participated in the distribution of the debtor's bankruptcy estate. After the close of the bankruptcy case, the creditor filed an action to recover the balance of its claim. The debtor asserted that the creditor, by participating in the distribution of the estate, waived and was estopped from collecting the balance of its claim notwithstanding the creditor's exception from discharge. The Supreme Court held that the creditor's participation in the distribution of the debtor's estate did not affect his right to collect the balance of his claim after the close of the bankruptcy case.

It is apparent that the exemptions [from discharge] do not rest upon any theory of the exclusion of the creditor from the bankruptcy act, or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded. *Id.* at 39, 33 S.Ct. at 508.

The Supreme Court's decision in *Friend* must be considered in connection with one of the "rules" of statutory construction adopted by the Supreme Court: if Congress intends for legislation to change the interpretation of a judicially created concept, it is required to make that intent specific in its legislation. *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986). Therefore, in light of the Supreme Court's decision in *Friend*, if Congress had intended for a creditor with a nondischargeable judgment to be excluded from participating in the distribution under a plan or to be restricted from collecting the balance of the judgment outside the plan, it would have enacted specific legislation in that regard.

In this case, the provisions in the Modified Plan by which the Debtors attempt to restrict NCNB's right to execute or collect on its nondischargeable judgment violate the provisions of the Code and impermissibly impair the benefits provided NCNB as a creditor with a nondischargeable judgment. Accordingly, the Debtors' Modified Plan does not comply with all applicable provisions of the Code as required by § 1129(a)(1) and cannot be confirmed unless or until Article VIII relating to the payment of NCNB's claim is excluded from the operative provisions of the Modified Plan. The Debtors Motion for Cramdown of the Modified Plan against NCNB will therefore be denied.

Upon the entry of an order of confirmation in this case, NCNB will be entitled to participate in the distribution of the Debtors' estate as an unsecured creditor and to collect the balance of the nondischargeable debt outside the plan in any manner provided by law.

The Court will enter a separate order in accordance with this opinion.