In re Kenneth James **RIDEOUT** and Cari Collins Rideout, Debtors.

Bankruptcy No. 85–00177.

United States Bankruptcy Court, N.D. Ohio, W.D.

May 9, 1988.

Louis J. Hattner, Michael W. Bragg, Toledo, Ohio, for debtors.

H. Buswell Roberts, Jr., Dean E. Sheldon, III, Toledo, Ohio, for Hahns.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Hearing on Charles and Anita Hahns' Motion to Vacate Order. At the Hearing, the parties had the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the evidence presented and arguments of counsel, as well as the entire record in this case.

Based on that review, and for the following reasons, the Court finds that the Motion to Vacate Order should be Granted.

## FACTS

The facts in this case are not in dispute. The Debtors filed their Chapter 11 Petition on March 18, 1985. Kenneth and Cari Rideout do business as "Rideout Farms", and were also formerly doing business as "Rideout Power Equipment", an Ohio corporation. The Debtors' farm consists of approximately Eighty (80) acres in Benton Township, and Eighty (80) acres in Clay Township, both in Ottawa County, Ohio.

The Hahns are creditors of the Rideouts by virtue of a certificate of judgment filed in Ottawa County, based upon a judgment obtained against the Debtors. Under Ohio law, the certificate of judgment creates a lien which only attaches to the land and fixtures of the Debtors. The amount owed to the Hahns is listed in the Debtors' Schedules as Two Hundred Fifty-six Thousand Six Hundred and Thirty-four Dollars ($256,634.00).

On January 23, 1987, the Debtors–In–Possession filed an amended Disclosure Statement, and with it, an amended proposed Plan of Reorganization. A Hearing was held on February 12, 1987, and the Disclosure Statement was approved without objection. At the Hearing, Counsel for Charles and Anita Hahn made an oral Motion to the Court, pursuant to Bankruptcy Rule 3014, electing to be treated as secured under 11 U.S.C. § 1111(b). A written notice of the Election was filed the same day. The Debtors filed an Objection to the § 1111(b) Election on February 20, 1987, asserting that the Hahns' interest in the property was of "inconsequential value", and therefore the Hahns were precluded from making the Election by § 1111(b)(1)(B)(i).

The Court held a Hearing on the Debtors' Objection to Hahns' § 1111(b) Election. At the Hearing, testimony was presented by different appraisers as to the value of the Debtors' real estate. The Court issued an Opinion which held that the value of the real estate exceeded the amount of the other liens on the property, and the excess was not "inconsequential". *See, In re Rideout,* 75 B.R. 104, 16 B.C.D. 121 (Bankr.N.D.Ohio 1987). Accordingly, the Hahns' § 1111(b) Election was allowed.

The Hearing on Confirmation took place on September 4, 1987. The Hahns and their counsel did not appear at the Hearing. Consequently, the Debtors' Plan was approved without Objection. At the Hearing, the Court expressed some surprise that the Hahns were not present, after the previous history of litigation on their Claim. The Debtors' Plan provided for a payment of 2% on the amount owed to the Hahns.

After the Hearing, the "Order Confirming Plan" was sent to all the Creditors. Shortly thereafter, the Hahns filed a "Motion to Vacate Order" because they never received notice of the Confirmation Hearing. In their Motion the Hahns indicated that they never received the "Notice Approving Disclosure Statement and Order Fixing Time for Filing Acceptances or Rejection of Plan and Hearing on Confirmation, with Notice Thereof." The Motion to Vacate stated, "As can be seen from an examination of the order itself, copies of the order were mailed only to the debtor and to counsel for the debtor." The Motion also stated, "Charles and Anita Hahn had no notice of the confirmation hearing or of the date on which objections were to be filed."

After reviewing the materials filed in the case, the Court determined that the Hahns had not received notice of the Confirmation Hearing. Accordingly, the Court Vacated the Confirmation Order. The Debtors filed an Appeal of the "Order Vacating Confirmation Order". On Appeal to the United States District Court, the Honorable Richard B. McQuade, Jr. reversed the Order of this Court on procedural grounds, holding that Notice and a Hearing were required. Accordingly, this Court held a Hearing on January 28, 1988 on the Motion to Vacate Confirmation Order.

At the Hearing, the Rideouts did not dispute that the Hahns never received notice. Instead, Counsel for the Rideouts argued that the Hahns knew the Rideouts

were in bankruptcy and should have inquired as to when the Hearing on Confirmation was scheduled. The Rideouts also contend that this Court cannot Vacate its "Order Confirming Plan", because the only grounds for Revoking an Order of Confirmation are found in § 1144, and there has been no showing of fraud as is required by that section.

The Hahns direct the Court's attention to the sequence of events reflected in the record. The "Notice Approving Disclosure Statement and Order Fixing Time for Filing Acceptances or Rejection of Plan and Hearing on Confirmation, with Notice Thereof" (hereinafter "Notice") shows that copies were sent only to Debtors' Counsel and the Debtors. It was not sent to the Hahns, or any other Creditor. In paragraph two, the "Notice" directed the Debtors to serve all interested parties with the First Amended Plan, the Disclosure Statement, and Ballots for accepting or rejecting the Plan. That material was sent to the Creditors, but those items did not contain information on the Hearing date, and the time for filing Objections to the Plan. The record does not reflect any other notice of the date and time of the Confirmation Hearing. Moreover, the "Notice" required the Debtors to serve a Ballot conforming to Official Form No. 30. At the bottom of the Official Form, the Ballot should state: "Return the ballot on or before _____
_____." The Ballot sent to the Creditors contained neither a return date, nor any blank space for including a return date.

The Hahns contend that the Order Confirming Plan is void because of a lack of notice. Counsel for the Hahns asserts that the Court may revoke its Order under the Due Process requirements of the Constitution of the United States, F.R.Civ.P. 59 and 60 which are made applicable to bankruptcy cases through Bankruptcy Rules 9023 and 9024. The Hahns also cite 11 U.S.C. § 105(a).

The Court takes Judicial Notice of its own procedures for noticing creditors after the approval of a Disclosure Statement. Bankruptcy Rule 3017 provides:

**(d) Transmission and Notice to Creditors and Equity Security Holders.**

On approval of a disclosure statement, the debtor in possession, trustee, proponent of the plan, or clerk as ordered by the court shall mail to all creditors and equity security holders ... (3) notice of the time within which acceptances and rejections of such plan may be filed; (4) notice of any date fixed for the hearing on confirmation ...

This Court requires the Debtors–In–Possession to serve the "Notice" on the Creditors. The "Notice" provides the date of the Confirmation Hearing, and all the relevant dates for filing Objections and Ballots. However, in the present case, the "Notice" did not specifically direct the Debtors to serve the "Notice" with the other listed items.

## LAW

There are two questions presented in the case at bar. First, did the lack of notice to the Hahns, and the other Creditors, render the Order Confirming Plan void? Second, does this Court have the power to Vacate the Order Confirming Plan?

The Supreme Court addressed the relationship between notice and the Fourteenth Amendment in *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mullane*, the Supreme Court stated, "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane, supra*, 339 U.S. at 313, 70 S.Ct. at 656, 94 L.Ed. at 873. The Court went on to hold:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of

such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance ... (citations omitted)

The Supreme Court subsequently considered the notice issue in the bankruptcy context in *City of New York v. New York, New Haven, & Hartford Railroad Company,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In this case, the reorganized railroad sought an order declaring certain real property free and clear of assessment liens held by the City of New York. The railroad also wanted injunctive relief restraining the City from attempting to enforce the liens. The railroad based its action on the fact that the City had timely, actual notice of the bankruptcy, but had not filed its claims for the assessments in the proceeding. The railroad argued that the failure of the City to file its claim precluded the City from participating in the reorganization, and rendered the liens unenforceable against the reorganized debtor. New York City contended that it did not receive notice by mail directing the filing of its claims by the bar date. The only notice provided to the City was by newspaper publication. The Supreme Court ruled that publication of notice in the newspaper was not "reasonable notice". Justice Black's opinion held that a creditor's knowledge that a reorganization proceeding has been instituted does not make it the creditor's duty to inquire about possible court orders limiting the time for filing a claim.

Following *Mullane* and *City of New York,* various Circuits Courts have rejected the position argued by the Rideouts, that the Creditors should be deemed to have notice because they were aware of the bankruptcy. The Sixth Circuit rejected a similar argument in *In re Yoder Co.,* 758 F.2d 1114 (6th Cir.1985). The Court of Appeals held: "A creditor's knowledge that a reorganization of the debtor is taking place does not substitute for mailing notice of a bar date." *Yoder, supra,* at 1116.

The most recent decision addressing the notice requirements of the Due Process Clause is *In re Herd,* 840 F.2d 757 (10th Cir.1988). In *Herd,* the court held that notice to creditors was deficient where one of the two bar dates in the notice had expired six months before the filing of the bankruptcy petition, the notice having listed "1983" as the year, instead of "1984". The Tenth Circuit determined that the creditors were not required to inquire, or attempt to interpret, an ambiguous notice. The court quoted from *In re Spring Valley Farms, Inc.,* 85 B.R. 593 (N.D.Ala.1988):

... The responsibility does not lie with the creditors or claimants to search out what is required procedurally of them in this situation. The law provides them with a right to appropriate, effective notice.

*Herd, supra,* at 759.

Similar statements of the controlling legal principles are found in: *Broomall Industries v. Data Design Logic Systems,* 786 F.2d 401 (Fed.Cir.1986); *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94 (1st Cir. 1974); and *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3d Cir.1967); *and Cf., Matter of Park Nursing Center, Inc.,* 766 F.2d 261, 263 (6th Cir.1985) (Constitutionality of Bankruptcy Rule 704(c)(1)). Accordingly, the Court must conclude that the total absence of notice to the Hahns concerning the Hearing on Confirmation, and the various deadlines, renders the "Order Confirming Plan" violative of the Fifth Amendment.

Furthermore, even if the law required the Court to search through the record for some grounds for holding that notice should be imputed, the search would be fruitless. The record does not reflect anything approaching the kind of constructive notice which would give rise to a duty to inquire. On the contrary, the Hahns were justified in assuming that the Hearing on Confirmation could not have been scheduled on the date it was held. The first factor which would militate against a finding of inquiry notice is obvious, the Hahns were not sent the actual notice which they were entitled to receive. *See* 11 U.S.C. § 1128(a) and Bankruptcy Rule 3017(d)(3)–(4). Accordingly, their reliance on the fact that they had not received no-

tice was reasonable under the circumstances. Beyond this, Bankruptcy Rule 2002(b) requires Twenty-five (25) days notice for a Hearing to consider Confirmation of a Plan of Reorganization. The "Notice" required the Debtors to file the listed materials on, or before, August 10, 1987, and return proof of service on, or before, August 13, 1987. The Certificate of Service reflects that the required materials were not mailed until August 18, 1987, five (5) days late. Thus, if the mailed materials were the kind of "constructive notice" which should give rise to inquiry, it would be an inquiry about a possible Confirmation Hearing on, or after, September 9, 1987. Accordingly, even if decisions construing the Due Process requirements were ignored, and a constructive notice standard were used, no duty to inquire could be imposed under the facts in this case.

■ Counsel for the Rideouts has also argued that the Hahns "slept on their rights" in this case. However, without attempting to shift responsibility from this Court, it was also a lack of diligence on the part of the Rideouts' which contributed to this problem. In the second paragraph of the "Notice", the Debtors were Ordered to serve "a ballot conforming to Official Form No. 30". The Official Form includes a place for the Debtors–In–Possession to list the deadline for accepting or rejecting the Plan. The Ballot created by the Debtors does not contain a space for the last day to file the Ballots. Thus, by failing to follow the Orders of the Court, the Debtors short circuited one of the procedural safeguards which could have alerted the Hahns. It should be noted that the deadline for filing written Objections to the Plan is typically the same date as the one fixed for filing Ballots. And, in fact, the dates were the same in the present case. It follows that, to a lesser extent, the absence of a timely Objection can also be traced to the non-standard Ballot.

Paragraph number three (3) of the "Notice" states:

3. Creditors whose claims are not listed or whose claims are listed as disputed, contingent or unliquidated as to amount who desire to cast a ballot on such plan, or share in any distribution, must file a proof of claim on or before August 28, 1987. Debtor shall notify any creditor or equity security holder whose claim or interest is scheduled as disputed, contingent or unliquidated of such fact by means of a separate properly captioned notice in accordance with Bankruptcy Rule 9004 and shall file proof of such service on or before August 13, 1987.

A review of the Schedules reflects that the Hahns' Claim is listed as "disputed". However, the Rideouts' Certificate of Service, which does not include any Exhibits showing what items were served, contains no reference to any "separate properly captioned notice" sent to the Hahns. The Debtors, on their own initiative, appear to have bypassed another procedural safeguard. It is unclear whether any of the other creditors were served with the "separate notice" Ordered in paragraph 3.

Finally, paragraph six (6) of the "Notice" provided the date which should have been placed on the Ballots, setting forth the last day for filing written acceptance or rejection of the Plan. It directs that the Ballots be filed with the Court, and with Debtors' Counsel. The "Notice" then gives Debtors' Counsel's address. At the end of the "Notice" is a Certification of Service by the Court, which lists the Rideouts and their Counsel as the only parties served.

*What is the Appropriate Remedy?*

As a preliminary matter, the Court must confess some puzzlement at the position asserted by Debtors' Counsel. Vacating the "Order Confirming Plan" may be a somewhat unusual approach to the problem presented in this case. However, from the Debtors' perspective, the usual solution appears to be undesirable. If the Court cannot Vacate its Order, the lack of adequate notice would result in the Hahns' Claim not being bound by the Plan, and therefore the obligation would not be discharged. *See, Reliable Electric Co. Inc., v. Olson Construction Company,* 726 F.2d 620 (10th Cir.1984); *In re Spring Valley Farms, Inc.,* 68 B.R. 756 (Bankr.N.D.Ala.1986), *aff'd* 85 B.R. 593 (N.D.Ala.1988); *In re*

*Chirillo*, 84 B.R. 120, 17 B.C.D. 446 (Bankr.N.D.Ill.1988). As a practical matter, it is difficult to understand why the Debtors feel that a defective Plan, which would be ineffective, is preferable to simply Vacating the Court's Order. It appears possible that *all* the Creditors who did not attend the Hearing on Confirmation could at least challenge the effectiveness of the Discharge provision based upon their lack of notice.

Nevertheless, returning to the Motion before the Court, Counsel for the Rideouts argues that even if there was a notice problem, the Court is powerless to Revoke its Order Confirming Plan. The Debtors cite the language of 11 U.S.C. § 1144, which states in pertinent part:

### § 1144. Revocation of an order of confirmation

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

Counsel for the Rideouts points out that 11 U.S.C. § 1144 is the only provision which addresses Revocation of an Order of Confirmation. Under § 1144, the only grounds for Revocation is a showing that the Order was "procured by fraud". Therefore, because the Hahns do not contend that the Order was obtained by fraud, Counsel for the Rideouts asserts that the Court lacks the power to Revoke the "Order Confirming Plan". They also cite *In re Toth*, 61 B.R. 160 (Bankr.N.D.Ill.1986); *In re D.F.D., Inc.*, 43 B.R. 393 (Bankr.E.D.Pa. 1984); and *Solon Automatic Services, Inc. v. Georgetown of Kettering, Ltd.*, 22 B.R. 312 (Bankr.S.D.Ohio 1982).

The Hahns maintain that a showing of fraud is not required in the present case because the "Order Confirming Plan" was *void ab initio*. The absence of notice, as required under the Fifth Amendment and the case law cited *supra*, provides the Court with grounds for Vacating the "Order Confirming Plan" under the Federal Rules of Civil Procedure and Section 105(a). The Hahns argue that § 1144 should only apply when proper notice to known creditors has been given pursuant to the Due Process Clause.

Initially, the Court has two competing concerns. First, the Rideouts' Plan would be in serious jeopardy if the "Order Confirming Plan" were not Vacated. If over a Quarter of a Million Dollars owed to the Hahns is not Discharged, the Rideouts will, in all likelihood, be unable to successfully reorganize. The Court does not wish to make any prospective rulings on issues that may be litigated in the future. However, several cases have held that the holder of a nondischargeable debt does participate in payments made under the Plan. *Friend v. Talcott*, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913); *In re Howell*, 84 B.R. 834, 17 B.C.D. 459, 461 (Bankr.M.D.Fla. 1988); *In re Edwards*, 74 B.R. 661, 665 (Bankr.N.D.Ohio 1987); *In re Handy*, 41 B.R. 172, 173 n. 1 (Bankr.E.D.Va.1984); *In re Ryan*, 32 B.R. 794, 797 (Bankr.D.Md. 1983). In addition, cases have held that the holder of a nondischargeable debt is not restricted from collecting the balance owed outside the Plan. *Friend v. Talcott, supra; In re Howell, supra*. Other decisions would require the Creditor to first request Relief from the Automatic Stay. *See, In re Chirillo*, 84 B.R. 120, 17 B.C.D. 446, 448 (Bankr.N.D.Ill.1988). The Debtors might argue that debts not discharged because of a lack of notice should be treated differently from debts which are nondischargeable. However, *In re Spring Valley Farms, Inc.*, 68 B.R. 756 (Bankr.N.D.Ala.1986), *aff'd* 85 B.R. 593 (N.D.Ala.1988), may support similar treatment. The point of this discussion is to outline the potential problems associated with a denial of the Hahns' "Motion to Vacate Order". Even using a "best case" scenario, the Rideouts would have to expect additional litigation in a case where the attorney's fees are already shocking for a farm Chapter 11. In the worst case, the ability of the Hahns to execute on the property of the Rideouts would be extremely disruptive to the Debtors' farming operation, thereby undermining the reorganization.

The Court's second concern is for the Hahns. They received no notice of the Confirmation Hearing, and consequently, they must litigate to protect their property interests, which were abrogated without Due Process.

■ There are two provisions which allow the "Order Confirming Plan" to be Vacated. To the extent that the Hahns did not receive notice because the Court failed to specifically direct the Debtors to mail the "Notice" to all parties, the Bankruptcy Court may use its inherent power to correct its own mistakes under 11 U.S.C. § 105(a). *In re Riso*, 48 B.R. 244, 246 (Bankr.D.N.H.1985); 2 *Collier on Bankruptcy* ¶ 105.04 at 105–10 (15th ed.1988). *See also, In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir.1986); *In re Flagstaff Foodservice Corp.*, 56 B.R. 910, 913 (Bankr.S.D. N.Y.1986); *In re American Resources Management Corp.*, 51 B.R. 713, 717 n. 7 (Bankr.D.Utah 1985); *In re John Clay and Co., Inc.*, 43 B.R. 797, 806–807 (Bankr.D. Utah 1984); *In re Casaudoumecq*, 46 F.Supp. 718, 723 (S.D.Cal.1942).

■ The "Order Confirming Plan" can also be Vacated under Federal Rule of Civil Procedure 60(b)(4). The Court did not have jurisdiction over the parties whose rights were adjudicated. Accordingly, the Order was void because it purports to deprive the Creditors of their property rights when they were not afforded notice and an opportunity to be heard.

■ The Rideouts argue that § 1144 is the only section under which the Court can Revoke a Confirmed Plan. However, there is no indication in the legislative history, or in case law, that the purpose of § 1144 is to preserve a Plan which is void. Instead, it appears Congress intended § 1144 to prevent the Revocation of a Plan based upon a mistake of law or fact. The policy considerations underlying § 1144 do not apply with equal force to the Vacating of a Confirmed Plan because of a lack of notice. Consequently, this Court does not read § 1144 as superseding its power to Vacate the Confirmed Plan under Federal Rule of Civil Procedure 60(b)(4).

It should be noted that throughout this Opinion the Court has used the term "Vacate", rather than "Revoke". The Revocation section, § 1144, is primarily used for *permanent* Revocation of the Plan, and the Discharge, because of fraud. In the present case, the Court's action is Vacating the "Order Confirming Plan", and will only result in the Hearing on Confirmation being reset, with the Court ensuring that the Creditors are given notice of that Hearing. Because the Court is not permanently revoking the Plan, this matter is distinguishable from many of the cases cited by the Rideouts. Also setting this case apart, is the fact that the Hahns brought this matter before the Court promptly, thereby minimizing the Creditors' reliance on the Confirmed Plan.

■ The Sixth Circuit addressed the use of two other subsections of Federal Rule 60(b) in *Matter of Park Nursing Center, Inc.*, 766 F.2d 261, 263–264 (6th Cir.1985). In *Park Nursing Center*, the Court considered the Constitutionality of service by first class mail under former Bankruptcy Rule 704(c)(1). In finding service by mail to be Constitutional, the Court looked at Rule 704(c)(1) in the context of the remedial provisions available, stating:

> The rule in question must be viewed against the backdrop of other available procedures for remedying any defects or limitations in the rule. Bankruptcy Rule 704(c)(1) satisfies due process requirements when interpreted in light of other remedies, namely, Federal Rules of Civil Procedure 55(c) and 60(b). The careful use of these three rules constitutes due process. If a default judgment in bankruptcy proceedings is entered against an individual who, through no fault of his own, failed to receive actual notice by first-class mail, then that judgment should be set aside under these rules upon a showing of meritorious defense. Thinking of the procedural process in bankruptcy proceedings as including Bankruptcy Rule 704(c)(1) and Federal Rules of Civil Procedure 55(c) and 60(b)(1) & (6) provides a means for reme-

dying the failure of first-class mail to effect notice.

*Park Nursing Center, supra,* at 263. (footnote omitted).

The Sixth Circuit's broad reading of the Court's powers under F.R.Civ.P. 60(b)(1) and 60(b)(6) may make those subsections applicable, despite the restrictions of § 1144. However, the catchall provision in 60(b)(6) does not provide the Bankruptcy Court with any powers in addition to those derived under 11 U.S.C. § 105. While Bankruptcy Courts are extremely cautious in their invocation of § 105, when its power is used, 60(b)(6) is mere surplusage. On the other hand, 60(b)(1) would provide a separate grounds for Vacating the "Order Confirming Plan". However, even under *Park Nursing Center,* it appears that Vacating an Order of Confirmation based on "mistake" or "excusable neglect" would run counter to the policy behind § 1144. Consequently, although the Hahns would appear to have a "meritorious defense" to their treatment under the Plan, F.R.Civ.P. 60(b)(1) is not one of the provisions upon which the Court relies in reaching its decision. Of course, § 1144's Constitutionality is not an issue because, as noted before, the rights of Creditors without notice are not affected by the Plan.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, the Court finding that the proper remedy for the failure to satisfy the procedural requirements of Due Process in this case is the granting the Hahn's "Motion to Vacate Order", and it appearing that the Creditors' interests have been adequately protected, it is

ORDERED that the "Order Confirming Plan" filed on September 4, 1987 be, and is hereby, VACATED.

It is FURTHER ORDERED that the Debtors' Discharge, be and is hereby, VACATED.