In the Matter of Edward P. BARNES, a/k/a Edward Barnes, a/k/a Ed Barnes, a/k/a Edward Preston Barnes, doing business as Ed Barnes Construction, formerly known as Barnes Home Improvements, Debtor–Appellee.

**Appeal of Gerald GRUENHAGEN.**

No. 91–2802.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1992.

Decided July 31, 1992.

John R. Emery (argued), Sager, Pavlick & Wirtz, Fond du Lac, Wis., for appellant.

Thomas E. Hughes (argued), Hughes, Mathewson, Carns & Slattery, Oshkosh, Wis., for debtor-appellee.

Before POSNER and MANION, Circuit Judges, and BURNS, Senior District Judge.[*]

POSNER, Circuit Judge.

In 1984 and 1985 the appellant, Gerald Gruenhagen, made unsecured personal loans totaling $12,000 to his friend and coworker, Edward Barnes, the appellee. (They were employed respectively as a test engineer and as an assembler.) These loans had not been repaid in September 1986 when Barnes filed a petition for bankruptcy under Chapter 7. Nevertheless Barnes did not list Gruenhagen on the schedule of creditors that he filed with the bankruptcy court, and as a result the court did not notify Gruenhagen of the proceeding. But within a month or so after the filing Barnes had a conversation with Gruenhagen in which he told him either that he was going to file for bankruptcy or that he had filed, but that he would not list (or had not listed) his debt to Gruenhagen, so that the debt would not be discharged, and after receiving a discharge of his other debts and emerging from bankruptcy he would pay Gruenhagen in full. The latter consulted a lawyer who (we were told at argument by Gruenhagen's current counsel) advised him to sit tight until he received a notification from the bankruptcy court. He of course received none. In January 1987 Barnes was discharged from bankruptcy. The listed creditors received five cents on the dollar.

In 1988 Gruenhagen began inquiring from Barnes when the debt would be repaid. Obtaining no satisfaction by this route, in August 1989 Gruenhagen brought a suit in state court to collect the debt. Barnes responded by asking the bankruptcy judge to reopen the bankruptcy proceeding to add Gruenhagen's debt to the schedule of debts. After some procedural steps (or missteps) unnecessary to recount, the bankruptcy judge issued an order declaring Barnes's debt to Gruenhagen discharged. The district judge affirmed.

The bankruptcy proceeding ended in January 1987 when Barnes was discharged. The motion to reopen was filed almost three years later. The usual motion to reopen a proceeding in which the judgment has become final is a collateral attack on the judgment and is therefore subject, in bankruptcy as in other federal cases, to the strict limitations of Rule 60(b) of the Federal Rules of Civil Procedure. *In re Edwards*, 962 F.2d 641 (7th Cir.1992). But Barnes's motion, though styled a motion to reopen, was not a collateral attack on the judgment. It was a request for supplementary relief. A petition for bankruptcy, at least when filed by the debtor, as in this case, is a plea for equitable protection. Discharge from debts is the principal relief sought. If the discharge granted by the bankruptcy court is not effective in protecting the debtor from his creditors, he can seek supplementary relief from the court, *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), just as any holder of an equitable judgment can seek supplementary relief from the court that entered the judgment. *Dugas v. Ameri-*

*can Surety Co.*, 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937). Gruenhagen's action in suing to collect a debt that Barnes had incurred before bankruptcy showed that the order of discharge was less effective than Barnes had thought (or hoped) it would be, and he was entitled to seek the aid of the bankruptcy court to enforce his view of the intended scope of the original discharge. Section 350(b) allows the reopening of a bankruptcy case without limit of time. There is no argument that reopening here is barred by laches, though Gruenhagen does, as we shall see, make a closely related argument of estoppel. At all events there is no *jurisdictional* obstacle to the reopened proceeding, and we may proceed to the merits.

■ A discharge in bankruptcy does not discharge any debt not listed in the debtor's schedule of debts unless the creditor "had notice or actual knowledge" of the bankruptcy proceeding in time to make a timely filing in that proceeding. 11 U.S.C. § 523(a)(3)(A). The bankruptcy judge stated that Gruenhagen "knew about the filing very shortly after it was filed." By this she meant, as she elsewhere stated, actual knowledge—a finding supported, if somewhat tenuously, by a reply that Gruenhagen had made to a question put to him on cross-examination. The district judge, however, said only that Gruenhagen "had notice of Barnes' bankruptcy case shortly after it was commenced." Whether he meant by this to reject the bankruptcy judge's finding of actual knowledge as clearly erroneous is unclear, but it does not matter. The statute requires notice *or* actual knowledge, and we have at least the former here.

■ Although "notice" is a legal conclusion, it is treated for purposes of appellate review as if it were a fact, implying significant deference to the trial court's determination. *In re Professional Investment Properties of America*, 955 F.2d 623, 626 (9th Cir.1992); *Shacket v. Philko Aviation, Inc.*, 841 F.2d 166, 170 (7th Cir.1988); *Chrysler Credit Corp. v. H & H Chrysler–Plymouth–Dodge, Inc.*, 927 F.2d 270, 273–74 (6th Cir.1991). Not all courts agree

with this approach, *United States v. Caro*, 965 F.2d 1548, 1553 (10th Cir.1992); *Becker v. Industrial Union of Marine & Shipbuilding Workers*, 900 F.2d 761, 769 (4th Cir.1990), but we think the majority view is correct. This is not because a legal conclusion *is* a fact in any very illuminating sense, but because the task of applying a legal standard to "facts" in the lay sense is particularistic and judgmental, making it more appropriate for deferential than for plenary review. *United States v. Spears*, 965 F.2d 262, 268–271 (7th Cir.1992); *Stewart v. Peters*, 958 F.2d 1379, 1382 (7th Cir.1992); *United States v. Wildes*, 910 F.2d 1484, 1486 (7th Cir.1990); *Mucha v. King*, 792 F.2d 602, 605–06 (7th Cir.1986). This standard requires us to defer to the determination that Gruenhagen had notice of the bankruptcy proceeding as a result of his conversation with Barnes in September or October 1986, well before the discharge and hence in ample time for Gruenhagen to have filed a claim in the proceeding. Barnes told Gruenhagen that he was going to file for bankruptcy and invited him to participate in a sneaky (in fact unlawful, as we are about to see) maneuver that would enable Gruenhagen to collect his debt in full outside the bankruptcy proceeding. Whatever his lawyer may or may not have told him, Gruenhagen should have known that he would not receive notification of the proceeding from the court, because he would not be listed as a creditor—Barnes had told him he would not be. He could not expect to receive notification from Barnes either. The whole point of the maneuver was that the debt would be handled outside of the proceeding, so there was no reason for Barnes to notify him of its commencement.

■ Although Gruenhagen challenges the factual basis for a finding of notice, the principal thrust of his appeal is directed elsewhere. He argues both that Barnes defrauded him out of pursuing his remedy in bankruptcy and that Barnes should be estopped to claim that his debt to Gruenhagen was discharged. In effect he argues that Barnes should be precluded by his conduct from pleading the statute. This is

not a negligible argument. It is true (taking the second part of it first) that estoppel, whether equitable or promissory (Gruenhagen's claim could be construed as both or either), requires that the plaintiff's reliance be reasonable, *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir.1992); *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 589 (7th Cir.1992); *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991), and even before he consulted a lawyer Gruenhagen knew that Barnes would emerge from the bankruptcy with a discharge. All Gruenhagen had was an oral promise by Barnes to pay him in full anyway, and Barnes could invoke the discharge to deny liability. But this analysis overlooks the fact that Gruenhagen's debt, the existence of which Barnes does not deny, is not listed on the schedule of debts in the bankruptcy proceeding. That omission might have led a reasonable person to think that Barnes would carry through, or at least try to carry through, on his promise. The qualification in the last sentence is significant, however. For would not Barnes emerge from bankruptcy stripped of his assets? How likely was it therefore that he could repay Gruenhagen in full? But we must understand the choice facing Gruenhagen: file a claim in bankruptcy and get a pittance (five percent as it turned out) or take his chances on Barnes's having enough assets (as a result of the statutory exemptions), or enough earning power, after the bankruptcy to repay the debt if not in full then in a greater percentage than the listed debts in bankruptcy. Apparently Barnes does have some assets and earning power or Gruenhagen would not have sued to collect the debt. And we are told that Barnes has begun paying the unpaid portion of his debts that were discharged in bankruptcy.

■ Fraud and estoppel are not sharply distinct, at least in this case. Barnes's promise to repay the debt in full outside of bankruptcy was a fraud on Gruenhagen if at the time Barnes did not intend to honor the promise. A fraudulent representation, like a claimed estoppel, is actionable only if there is reasonable reliance, a requirement intended in part to screen out trivial or concocted fraud claims. *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1549 (7th Cir.1990); *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1041–42 (7th Cir.1990). But the requirement may be satisfied here, as we have said.

■ Gruenhagen's claim still must fail. Barnes's fraud was also a fraud, more precisely a potential fraud, against his other creditors, and in *that* fraud Gruenhagen was a participant and is therefore barred. We cannot find a decision on point, but our conclusion is supported by general principles, *Schacht v. Brown*, 711 F.2d 1343, 1351, 1359–60 (7th Cir.1983); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir.1982), and, more important, by the statute. Section 523(a)(3)(A) is we believe intended for the protection of other creditors as well as the creditor whose debt is not listed. The reason is similar to that which forbids preferential treatment by an insolvent or incipiently insolvent debtor. If such treatment were allowed, creditors would race to make special deals with the debtor, whose financial collapse would be accelerated to the likely harm of his creditors as a group—and hence to debtors as a class, for they must pay higher interest rates if their creditors lack good remedies. *In re Taxman Clothing Co.*, 905 F.2d 166, 169 (7th Cir.1990); *In re Xonics Imaging Inc.*, 837 F.2d 763, 765 (7th Cir.1988).

The present case is not exactly the same. If bankruptcy were more draconian than it is, discharge would leave the debtor a financial husk incapable of honoring any side deal with a favored creditor. In fact debtors emerge with some assets (as a result of the statutory exemptions) and, more important, their earning power intact. Even so, if bankruptcy were administered more perfectly than human undertakings usually are, the law would be indifferent to any side deals with creditors whose claims had not been listed, because those claims would be paid out of assets (including human capital, i.e., earning power) to which the listed creditors had no legal right. But since bankruptcy is not flawlessly adminis-

tered, the law must be alert to the danger that if side deals such as Barnes and Gruenhagen attempted (or pretended) to strike are allowed, the debtor's incentive to conceal assets from his listed creditors will be increased. Creditors will lose confidence in bankruptcy, fearing that the debtor, in cahoots with favored creditors, is squirreling away assets to divide with them later.

If after all his debts are listed and discharged the debtor feels, and attempts to honor, a moral obligation to repay some or all of the debts in full, as apparently Barnes does, the law interposes no objection. There is in that case no preexisting deal that is sought to be enforced. But a creditor who has notice of the bankruptcy proceeding cannot be permitted by facile invocation of fraud or estoppel to bypass the proceeding by suing to collect the original debt and thus undermine the statute's purpose.

AFFIRMED.