**In re: Aldo MEDAGLIA, Debtor.**

**GAC ENTERPRISES, INC., a New Jersey Corporation and Albee Associates, a New Jersey Limited Partnership, Plaintiffs–Appellants,**

**v.**

**Aldo MEDAGLIA, Defendant–Appellee,**

**United States of America, Intervenor.**

**No. 867, Docket 94–5041.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1994.

Final Brief Submitted April 5, 1995.

Decided April 14, 1995.

---

Paul D. Feinstein, New York City (Robert P. Herzog, Linda B. Lewinter, on the brief, of counsel), for plaintiffs-appellants.

Matthew G. Roseman, Melville, NY (Roseman, Roseman & Feldman, of counsel), for debtor/defendant-appellee.

E. Roy Hawkens, Appellate Staff, Civil Div., Dept. of Justice, Washington, DC (Zachary W. Carter, U.S. Atty., Frank W. Hunger, Asst. Atty. Gen., William Kanter, Appellate Staff, Civ. Div., Dept. of Justice, of counsel), for U.S. as intervenor.

Before: FEINBERG, VAN GRAAFEILAND and WALKER, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal raises a question of due process in the context of a bankruptcy proceeding. Plaintiffs-appellants are creditors of Aldo Medaglia, an individual who filed for protection under Chapter 7 of the United States Bankruptcy Code (the Code). Although appellants had actual knowledge of

Medaglia's bankruptcy, they contend that due process required that they receive formal notice of the deadline for filing objections to the discharge of Medaglia's debts. The lack of formal notice, appellants claim, excuses their failure to challenge the discharge of their claims within the time prescribed by the Code. The issue before us is whether appellants' actual knowledge of the bankruptcy petition was a constitutionally permissible substitute for formal notice of the deadline, satisfying the requirements of due process. For the reasons set forth below, we find that it was.

## I. Background

In December 1991, Medaglia filed for relief under Chapter 7 of the Code, 11 U.S.C. § 101 et seq., in the United States Bankruptcy Court for the Eastern District of New York. Medaglia filed with the court a list of creditors, including addresses, as required by § 521(1) of the Code and Fed.R.Bankr.P. 1007(a)(1). The clerk of the court then notified listed creditors, pursuant to § 341 of the Code and Fed.R.Bankr.P. 2003(a), that a first meeting of creditors would be held on February 10, 1992 and that, in accordance with Fed.R.Bankr.P. 4007(c), objections to the discharge of particular debts would have to be filed within 60 days of that date, that is, by April 10, 1992 (the bar date).

In general, the conclusion of a bankruptcy liquidation in the case of an individual debtor such as Medaglia results in the discharge of "all debts that arose before the date of the order for relief under [Chapter 7]." 11 U.S.C. § 727(b). Exceptions to this general rule are set out in § 523 of the Code. They include debts "to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . .," 11 U.S.C. § 523(a)(2)(A), and debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Generally, objections to dischargeability must be brought before the bar date. 11 U.S.C. § 523(c)(1); Fed.R.Bankr.P. 4007. However, § 523(a)(3)(B) provides that such

debts are not dischargeable if the debtor's failure to list them precludes "timely filing of a proof of claim and timely request for a determination of dischargeability of such debt[s] . . . *unless . . . creditor[s] had notice or actual knowledge of the case in time for such timely filing and request . . . .*" 11 U.S.C. § 523(a)(3)(B) (emphasis supplied).

Plaintiff GAC Enterprises, Inc. (GAC) is a general partner of plaintiff Albee Associates (Albee). GAC and Albee assert claims against Medaglia of the sort described in subsections (a)(2)(A) and (a)(6) of § 523. Prior to the filing of Medaglia's Chapter 7 petition, plaintiffs had sued him and other defendants in the United States District Court for the District of New Jersey for violations of federal securities and anti-racketeering laws. Medaglia's Chapter 7 petition automatically stayed that proceeding before judgment was rendered. 11 U.S.C. § 362.[1]

Plaintiffs claim that neither one received the notice issued by the clerk of the bankruptcy court pursuant to § 341. Medaglia did not include Albee in his list of creditors submitted under § 521(1), and while he did include GAC in the list, GAC claims that the address Medaglia provided was not sufficient to ensure delivery of notice and that, in fact, notice was not received. Nevertheless, approximately 57 days before the bar date, counsel for plaintiffs wrote counsel for Medaglia indicating that they were aware of Medaglia's bankruptcy petition. Counsel for plaintiffs stated:

> You have advised us that Mr. Medaglia has filed for Chapter 7 protection in the Eastern District of New York. . . . Our position is that the claims of GAC and Albee against Mr. Medaglia are grounded in fraud and are therefore not dischargeable, and we intend to obtain a ruling from the Court on this issue; however, if Mr. Medaglia does not list GAC and Albee as creditors, then there is no question that the claims of GAC and Albee are not discharged.

In August 1992, approximately 125 days after the bar date had passed, plaintiffs insti-

---

1. Plaintiffs assert that thereafter they did obtain judgments against Medaglia's co-defendants in the New Jersey action.

tuted an adversary action in the bankruptcy court, challenging the dischargeability of their claims against Medaglia. Medaglia moved for summary judgment, arguing that plaintiffs' objection was time-barred. Plaintiffs cross-moved for an order, pursuant to Rule 4007(c), retroactively extending their time to file objections to dischargeability.

In June 1993, Bankruptcy Judge Robert John Hall granted summary judgment for Medaglia on the ground that, even if plaintiffs did not receive formal notice of the bar date, they did have timely, actual knowledge of the Chapter 7 petition, as evidenced by counsel's letter quoted above. Under § 523(a)(3)(B), plaintiffs' actual knowledge of the petition required that they file objections to dischargeability before the bar date. Judge Hall denied plaintiffs' cross-motion for a retroactive order extending their time to file objections to discharge.

Plaintiffs appealed to the United States District Court for the Eastern District of New York. In June 1994, Judge Arthur D. Spatt of that court affirmed the decision of the bankruptcy court. This appeal followed.

## II. Discussion

Appellants GAC and Albee claim that dismissal of their objections to dischargeability as time-barred deprived them of property without due process of law, prohibited by the Fifth Amendment to the United States Constitution. We must therefore determine whether the qualifying clause in § 523(a)(3)(B), which allows creditors' actual knowledge of a bankruptcy proceeding to substitute for formal notice of the bar date, meets the requirements of due process. Because appellants challenge the constitutionality of a United States statute, we invited the United States to submit a brief on this issue, pursuant to 28 U.S.C. § 2403(a) and Fed. R.Civ.P. 24(c). We have considered that brief and appellants' response thereto along with the original briefs filed in this court.

As a preliminary matter, we note that although appellants couch their argument in constitutional terms, they actually make two statutory arguments as well, both stemming from the principle that courts should not read statutes in a way that would render them unconstitutional. First, they contend that the bankruptcy court should not have strictly interpreted the language of § 523(a)(3)(B) in a way that would result in an unconstitutional deprivation of due process rights when applied in this case. Rather, appellants contend, the court should have read the word "case" as used in the phrase "notice or actual knowledge of the case" to mean the specific information required to be contained in the notice issued by the clerk of the court to listed creditors. However, appellants cite no persuasive authority for that proposed reading, and we decline to read the statute in a way that would so clearly deviate from its plain meaning. As discussed below, we do not believe that the plain meaning of the clause at issue, which permits general knowledge of a case to substitute for particular knowledge of the bar date, violates constitutional due process.

Appellants' second statutory argument is that the bankruptcy court should have read § 523(a)(3)(B) in light of the Bankruptcy Rules implementing that provision. Those Rules require the court to give a creditor notice of the bar date and make no mention of a creditor's actual knowledge. See Fed.R.Bankr.P. 2002(a) & (f). However, appellants' proposal would have us interpret the Rules in a way that would cause them effectively to supersede rather than implement § 523(a)(3)(B). A finding that the Rules require formal notice in all instances, regardless of creditors' actual knowledge, would make a nullity of the clause of § 523(a)(3)(B) at issue in this case. Once again, appellants point to no authority for such an interpretation, and we decline to read the Rules relied on by appellants in the manner proposed. Instead, we find that those Rules prescribe the procedure to be followed when formal notice is required. They do not speak to the situation in which, notwithstanding the absence of formal notice, creditors obtain actual knowledge of a bankruptcy proceeding. See *In re Alton*, 837 F.2d 457, 460 (11th Cir.1988) (per curiam); *Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir.1987).

We turn to appellants' contention that the bankruptcy court's application of § 523(a)(3)(B) violated due process. "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). The means to that end is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. Appellants do not say that they had no opportunity to be heard or that they had no notice "reasonably calculated" to apprise them of the pendency of Medaglia's Chapter 7 petition. The letter of their counsel quoted above precludes any such suggestion. Appellants contend instead that due process entitled them to a particular kind of notice, which they did not receive.

Section 523(a)(3)(B) contemplates the situation of unlisted creditors who have timely, actual knowledge of a "case" but fail to receive official notice of the bar date. The section imposes a burden on such creditors to come forward before the bar date. As the brief from the United States reminds us, it is well established that due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right. That general principle is by no means confined to the bankruptcy context. For instance, this court has held that where a claimant demonstrated actual knowledge of the seizure of property in an administrative forfeiture proceeding the government's failure to provide published notice as required by applicable regulations did not amount to a violation of due process. *United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler*, 972 F.2d 472, 482 (2d Cir.1992); see also *Mennen Co. v. Gillette Co.*, 719 F.2d 568, 570 (2d Cir.1983) ("mere failure of the clerk to give the parties notification that judgment

has been entered does ... not warrant an extension of time to appeal").

While general knowledge that a bankruptcy proceeding has commenced is not the same as specific knowledge of the bar date, provisions of the Code do enable a creditor to estimate the bar date with relative accuracy based only on knowledge of when a Chapter 7 petition was filed. Thus, Fed.R.Bankr.P. 4007(c) sets a bar date as 60 days following the date set for the first meeting of creditors, and Fed.R.Bankr.P. 2003(a) sets the first meeting of creditors as "not less than 20 nor more than 40 days after the order for relief." [2] Even if a creditor learns of the bankruptcy proceeding at a relatively late date (but before the bar date), Rule 4007(c) permits the creditor to move the court for an order extending the time in which to file objections to dischargeability. Therefore, while it is true that § 523(a)(3)(B) does impose a burden on unlisted creditors who obtain timely knowledge of a bankruptcy proceeding, that burden is minimal and certainly does not deprive unlisted creditors of their opportunity to be heard.

The argument that the "actual knowledge" proviso of § 523(a)(3)(B) offends due process has been specifically rejected by at least four courts of appeals. *In re Sam*, 894 F.2d 778, 781–82 (5th Cir.1990); *In re Green*, 876 F.2d 854, 856 (10th Cir.1989); *In re Price*, 871 F.2d 97, 99 (9th Cir.1989); *Alton*, 837 F.2d at 460 (11th Cir.). We agree with the reasoning of these cases.

We would stop discussion of the issue at this point were it not for appellants' claim that two decisions of the Supreme Court preclude a holding that actual knowledge of a Chapter 7 proceeding can substitute for formal notice of the bar date consistently with due process. Appellants rely on *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). The former decision holds that due process required a mortgagee to receive mailed notice of a tax sale. However,

2. In the case of a voluntary petition such as Medaglia's the order for relief is the petition itself. 11 U.S.C. § 301.

the mortgagee in that case did not have timely, actual knowledge of the pendency of the proceeding in which the tax sale occurred. We find, therefore, that *Mennonite* does not control this case.

The *City of New York* decision, however, requires more discussion. *City of New York* concerned the reorganization of the New York, New Haven & Hartford Railroad Company under § 77 of the Bankruptcy Act of 1898. 47 Stat. 1474, as amended, 49 Stat. 911 (the Act). The City held tax liens in rem against several pieces of property owned by the Railroad. Notwithstanding the instruction of § 77(c)(4) of the Act, analogous to § 521(1) of the Code, the district court in the reorganization proceeding did not order the Railroad to file a list of creditors. 344 U.S. at 296, 73 S.Ct. at 301. At some point after commencement of the proceeding, the district court set a bar date for filing of claims pursuant to § 77(c)(7). Then, the court ordered the Railroad to mail the bar date order to creditors who had already appeared in court and to give notice to all other creditors by publication of the order on two separate occasions in five daily newspapers. *Id.* at 294, 68 S.Ct. at 1064. The City, which had not previously appeared in the proceeding, did not receive a copy of the bar date order and did not file a claim as to its tax liens.

Following reorganization, the Railroad sought a declaratory judgment establishing its title to the subject properties free of the City's tax liens. The City objected on several grounds, including that it had not received formal notice of the bar date. The district court rejected this argument, finding that "[n]o contention is made that the procedure of Sec. 77 was not faithfully followed in these proceedings, or even, if that be important, that the City lacked knowledge of the pendency of these proceedings under Sec. 77." *In re New York, N.H. & H.R. Co.*, 105 F.Supp. 413, 420 (D.Conn.1951). This court affirmed on the opinion of the district court, over a dissent by Judge Frank. 197 F.2d 428 (2d Cir.1952) (per curiam). The Supreme Court then reversed, stating that "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given

them before their claims are forever barred." 344 U.S. at 297, 73 S.Ct. at 301.

Appellants claim that this observation pertaining to corporate reorganization under the former Act requires us to hold that actual knowledge of an individual debtor liquidation proceeding under the present Code cannot fairly substitute for formal notice of a bar date. We do not agree. The Supreme Court's brief opinion, authored by Justice Black, indicates that it regarded the issue before it as one of statutory interpretation. The Court first pointed to § 77(c)(8) of the Act, which provided that "[t]he judge shall cause reasonable notice of the period in which claims may be filed, ... by publication or otherwise." See *id.* at 296, 73 S.Ct. at 301. Then, the Court held that "publication of the bar order in newspapers cannot be considered 'reasonable notice' to New York under the circumstances of this case." *Id.* Finally, in response to the argument that the City knew "that reorganization of the railroad was taking place in the court," the Court made the observation, quoted above, upon which appellants rely.

It is apparent that the Court was construing what was then § 77 of the Act, dealing with railroad reorganizations, and not the Constitution. See *Sam*, 894 F.2d at 781 ("*City of New York* apparently was decided on statutory rather than constitutional grounds."). Thus, the Court first construed the statutory term "reasonable notice" and then pointed out, in effect, that nothing in the statute vitiated creditors' "right to assume" that they would receive such "reasonable notice" before their claims were barred. Judge Frank's dissenting opinion in our court, the reasoning of which the Supreme Court effectively adopted, supports this view. The dissent had emphasized the absence from § 77 of "a constructive-notice clause" like the one contained in § 17(a)(3) of the Act (the predecessor to current Code § 523(a)(3)(B)), which Judge Frank assumed to be valid. 197 F.2d at 433 (Frank, J., dissenting). He added that a constructive notice provision "is ordinarily a creature of statute; courts usually will not impose the onerous burden of constructive notice on a litigant when it has not been imposed by the

legislature." *Id.* (citations omitted). The case now before us is different. The statute itself, in § 523(a)(3)(B), does contain a constructive notice clause that makes crystal clear that a creditor with timely, actual knowledge of the "case" does *not* have the "right to assume" that it will receive formal notice before its claims are barred. Section 523(a)(3)(B) specifically qualifies any right to assume receipt of formal notice.

Other courts have pointed out that *City of New York* is distinguishable for this or other reasons, and we agree. Thus, several courts have held that the relevant statutory language places upon creditors with "notice or actual knowledge" of an individual debtor proceeding a duty to inquire that did not apply to the City in *City of New York.* E.g., *Sam,* 894 F.2d at 781–82; *Green,* 876 F.2d at 857 (discussing subsection (A) of § 523(a)(3) which, like subsection (B), contains a "notice or actual knowledge" clause, and finding that because of this language a Chapter 7 creditor with actual knowledge "does *not* have the 'right to assume' receipt of further notice"); *Alton,* 837 F.2d at 460.

Courts have also cited differences between individual debtor liquidation and corporate reorganization to explain the different treatment of creditors' actual knowledge in the respective statutory provisions. As the Supreme Court recently observed, "Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Pioneer Inv. Servs. v. Brunswick Assocs.,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). By their very nature corporate reorganizations frequently do not lend themselves to the goal of promptness. Unlike knowledge of an individual debtor petition, knowledge of a corporate reorganization petition does not readily enable a creditor to estimate the bar date. As Judge Frank explained in dissent in *City of New York,* reorganizations are typically long, drawn-out proceedings, and "[a] creditor, hearing that they have begun, may not unreasonably sit back through the passing years, believing that he will be notified when the time has come for filing his claim." 197 F.2d at 432 n. 2 (Frank, J., dissenting). Courts have relied on the different policies underlying corporate reorganizations and individual debtor proceedings in upholding the requirement that creditors in the latter type of proceeding act on their notice or actual knowledge, notwithstanding absence of formal notice. E.g., *Green,* 876 F.2d at 856 (distinguishing *Reliable Elec. Co. v. Olson Constr. Co.,* 726 F.2d 620 (10th Cir.1984), a corporate reorganization case in which the court had relied on *City of New York* ); *Alton,* 837 F.2d at 460 (notice or actual knowledge proviso "furthers the bankruptcy policy of affording a 'fresh start' to the [individual] debtor"); see also *In re Compton,* 891 F.2d 1180, 1186 n. 11 (5th Cir.1990) (discussing distinction other circuits have drawn between burden on creditors in Chapter 7 and Chapter 11 proceedings).

Finally, appellants rely on cases in which Chapter 7 creditors were held not time-barred, even though they had timely, actual knowledge of a proceeding but did not come forward until after the bar date. These cases are readily distinguishable. Three of them appear to have been influenced in part (perhaps dispositively) by the creditors' unwitting reliance on flawed notices issued by the clerk of the court. See *In re Cortes,* 125 B.R. 418, 420–21 (E.D.Pa.1991); *In re Podzamsky,* 124 B.R. 612, 613–14 (Bankr. M.D.Fla.1991); *In re Schwartz & Meyers,* 64 B.R. 948, 953 (Bankr.S.D.N.Y.1986). A fourth case, *In re Rogowski,* 115 B.R. 409 (Bankr.D.Conn.1990), relies on *City of New York,* erroneously characterizing its holding as stating a due process right rather than a statutory right, *id.* at 414–15, and failing to acknowledge the distinction between individual debtor liquidations and corporate reorganizations discussed above.

■ We hold, therefore, that because appellants had timely, actual knowledge of Medaglia's Chapter 7 petition, application of § 523(a)(3)(B) to them did not deprive them of their Fifth Amendment due process rights.

Judgment affirmed.