In re Vincent A. LUCCHESI, Debtor.

Margaret LUCCHESI, Individually and as Administrator of the Estate of Louis Lucchesi, Plaintiff,

v.

Vincent A. LUCCHESI, Defendant.

Bankruptcy No. 90–21521–B.
Adv. No. 94–1229.

United States Bankruptcy Court,
W.D. Tennessee
Western Division.

May 16, 1995.

Michael P. Coury, Humphreys, Dunlap, Wellford, Acuff & Stanton, P.C., Memphis, TN, for debtor.

Carroll C. Johnson, III, Memphis, TN, for plaintiff.

## MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY AND ON DEBTOR'S MOTION TO AMEND SCHEDULES

WILLIAM H. BROWN, Bankruptcy Judge.

This proceeding is before the Court on the complaint filed by Margaret Lucchesi, individually and as administrator of the estate of her deceased husband Louis Lucchesi, who was a brother of the defendant/debtor Vincent A. Lucchesi. The complaint seeks a determination that loans made by Louis and Margaret Lucchesi to the debtor are excepted from discharge under 11 U.S.C. § 523(a)(3). The Court has conducted a trial and heard the testimony of the parties and a witness, read the deposition of an unavailable witness, Gerald W. Lindsay, read the interrogatory responses and admissions of the defendant, and considered the entire record of this proceeding.

Under 28 U.S.C. § 157(b)(2)I this is a core proceeding over which the bankruptcy court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 to enter a final order subject to appeal to the United States District Court. The following memorandum opinion contains the Court's findings of fact and conclusions of law in accordance with FED.R.BANKR.P. 7052.

### DISCUSSION OF FACTS

Prior to the filing of this adversary proceeding, this Chapter 11 case had been closed after the debtor obtained an order confirming a liquidation plan. It is not disputed that the debtor's non-exempt assets sold for an insufficient amount to satisfy the claims of secured creditors and that unsecured creditors received no distribution under the confirmed plan. The debtor received a discharge under that plan. 11 U.S.C. § 1141.

The basic issue presented in this proceeding is whether the debtor's intentional failure to list Louis and Margaret Lucchesi as creditors in his bankruptcy petition's schedules mandates the conclusion that their debts are nondischargeable. It is not disputed that the debtor knew of his indebtedness to his brother and sister-in-law, nor is it disputed that those familial creditors were aware that the debtor had filed for Chapter 11 relief. What is disputed is whether these creditors' due process rights were denied by their omission from the bankruptcy petition so that they received no notices from the clerk of the bankruptcy court.[1]

The beginning point of this analysis is § 523(a)(3) of the Bankruptcy Code, which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

>> (A) if such debt is not of the kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

>> (B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim

---

1. There was no notice mailed from the bankruptcy court clerk to these plaintiffs; thus, there is no issue of the creditors being misled by an incorrect notice from the clerk. *Compare Nicholson v.* *Isaacman (In re Isaacman),* 26 F.3d 629 (6th Cir.1994) (addressing a creditor's reasonable reliance on the clerk's erroneous statement as to a bar date).

and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; . . .

The debtor admitted that he executed a promissory note on August 8, 1984, and another note on January 25, 1985, that he paid $3,000 on the notes on or about December 23, 1987, and that he obtained an additional loan not evidenced by a written note in the amount of $3,000 on or about August 26, 1988. He also admitted that he intentionally did not list Louis or Margaret Lucchesi as creditors in his bankruptcy petition or schedules, just as he did not list some other family members to whom he owed money. However, the debtor testified and stated in his response to admissions and to interrogatories that he did not list these creditors because of specific requests or directions from the affected creditors.

As to Louis and Margaret Lucchesi, the proof established that Vincent Lucchesi had talked with them on several occasions about the possibility that he would have to file bankruptcy because of the lack of sales on his real estate development. The debtor had been engaged in the construction business most of his life prior to his Chapter 11 filing. On the day after that filing, Vincent Lucchesi came to their home and told Louis and Margaret Lucchesi that he had filed, that he did not list them as creditors, and that he intended to pay them. Subsequent conversations took place between Vincent and his brother Louis, who were close and often visited in each other's homes. Conversations also took place in the presence of Margaret Lucchesi, such as on Thanksgiving after the bankruptcy filing when Vincent repeated at dinner his intention to pay his family debts. Margaret Lucchesi testified that Vincent came to their home several times for dinner after his bankruptcy filing and said that he "hoped to pay them."

These loans at issue were made at Louis Lucchesi's insistence out of his desire to assist his brother in what the entire family understood to be difficult financial times. Margaret Lucchesi testified that she relied upon her husband's judgment in dealing with his brother. It was only after his death that she assumed responsibility for collection of the debts. There was a proffer of proof from Gary Lucchesi, the son of Louis and Margaret, concerning his conversation with his father to the effect that Louis asked his children to be responsible for collecting the debts from Vincent. While both Louis and Margaret Lucchesi expected to be repaid, no demand was ever made for repayment nor was suit ever filed prior to this adversary proceeding. The loans were made with knowledge that Vincent Lucchesi "owed everybody," and when the subsequent loans were made, no repayment had been made, other than the one $3,000 payment, after which an additional $3,000 was loaned. Margaret Lucchesi testified that she and her husband took no steps to collect the debt, including after the bankruptcy filing, because she thought it would be a waste of money to do so. She and her husband were aware that repayment of their debts depended upon Vincent Lucchesi successfully selling houses that he had constructed. At one point after the bankruptcy filing, Louis Lucchesi assisted the debtor by attempting to produce a buyer for one or more of the houses. *See* deposition of Gerald W. Lindsay. This effort is consistent with Louis and Margaret Lucchesi's belief that the sale of the houses was the only source for payment of all of Vincent Lucchesi's debts, including theirs. After negotiated sales were not produced, the houses were sold by public auction, and Louis and Margaret Lucchesi were aware of that auction.

Vincent Lucchesi stated that he kept no secrets, prior to the Chapter 11 filing, from his family members, including his brother Louis. Immediately prior to the Chapter 11 filing, Louis Lucchesi told Vincent not to list him as a creditor as he did not want others to know his family's business affairs. Louis also stated that he understood that if the houses did not sell for enough to pay him that he could not be paid. It appears to be clear that the family understood that Vincent was unable to pay the family debts unless he could sell his assets for a sufficient amount. Vincent Lucchesi thought that the Chapter

11 would offer an opportunity to do just that but the ultimate auction did not yield enough to satisfy the claims of secured creditors. After the auction, which Louis attended, Louis did not express anger nor demand payment.

As to his legal obligation to list all creditors, the debtor admitted that he knew this but that he did not list his brother, sister-in-law, sister or mother on the bankruptcy petition. These omissions were with the knowledge of each affected family creditor and without any intent to defraud other creditors. There is no evidence that the debtor preferred his family or made fraudulent transfers to them. Rather, the debtor was acting in accordance with the family's wishes to leave them off the bankruptcy petition and to pay them if he could.

The debtor's financial picture has not improved dramatically since his discharge in the confirmed Chapter 11 plan. He is sixty-four years old, draws social security, and assists his son in the son's pasta business where Vincent Lucchesi made approximately $4,500 in 1994. The debtor continues to express his desire to pay these family debts when he can. However, in his testimony, the debtor stated that he intended to discharge his legal obligation on these debts.

### CONCLUSIONS OF LAW

From examination of the pertinent facts, it is clear that everyone was aware that Vincent Lucchesi had filed for bankruptcy relief and that he had not listed the family members to whom he owed money. As to these plaintiffs, the omission was consistent with Louis Lucchesi's request to be left off of the bankruptcy petition. The plaintiffs now argue that, notwithstanding their actual knowledge of the bankruptcy filing and their omission as creditors, they have been denied due process in that they did not receive actual notices from the bankruptcy court to alert them of such deadlines as a bar date to file a proof of claim, objections to discharge, or § 523(c) dischargeability determinations. Moreover, the plaintiffs argue that the debt-

or's intentional omission can not produce a discharge of the omitted debts. In support of their arguments, the plaintiffs contend that they relied upon the debtor's pre- and postbankruptcy assertions that he intended to pay them. The Bankruptcy Code of course permits a debtor to voluntarily repay debt at any time, including after discharge. 11 U.S.C. § 524(f). Voluntary repayment or acknowledgement of a moral obligation to repay discharged debt is distinguished from reaffirmation of an otherwise dischargeable debt. Reaffirmation requires a written agreement that is filed with the court prior to the debtor's discharge. 11 U.S.C. § 524(c). There is no proof of such a reaffirmation as to these plaintiffs[2] in this case.

The plaintiffs primarily rely upon the authority of *In re Rideout,* 86 B.R. 523 (Bankr. N.D.Ohio 1988), where that Court considered the relationship between notice and the Fourteenth Amendment. *Rideout* was not a dischargeability or discharge case; rather, it involved an issue of vacating the order of confirmation of a Chapter 11 plan based upon lack of notice to affected creditors of the confirmation hearing. The complaining creditors had been listed in the original petition and they had participated in the Chapter 11 case, attending, for example, the disclosure hearing and electing to be treated as fully secured creditors under 11 U.S.C. § 111(b). However, no notice of the confirmation hearing was sent to these creditors and the bankruptcy court found such lack of notice to be justification in that case for a vacating of the order of confirmation. As the debtor's counsel argued in the present case, in *Rideout* there clearly was evidence of prejudice to the complaining creditors when they were adversely affected by confirmation of a plan without notice.

There is no proof of such prejudice to Louis or Margaret Lucchesi in this case. It is true that they did not receive any notices from the bankruptcy court clerk; however, unlike *Rideout,* the Lucchesi family creditors had no expectation of receipt of notices as they knew of and consented to their omission

---

**2.** The Court will refer to "plaintiffs" in order to indicate both Margaret Lucchesi individually and

in her representative capacity.

from the debtor's bankruptcy petition. There is no due process denial here when the affected creditors had no expectation of formal notice. Moreover, it is not disputed that the plaintiffs were unsecured creditors and that such creditors received no distribution in the case. Thus, there was no prejudicial treatment of listed unsecured creditors over unlisted unsecured creditors. When directly asked by the Court, counsel for the plaintiffs could offer no suggestion as to how the plaintiffs would have improved their position by participation in the Chapter 11 case or plan. Moreover, the plaintiffs can not reasonably rely upon a due process argument when Louis Lucchesi requested that the debtor not list him in the bankruptcy and Margaret Lucchesi relied totally upon her husband's judgment. *See, e.g., Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F.2d 1428, 1431 (9th Cir.1990).

Subsequent to the trial in this adversary proceeding, the Court of Appeals for the Second Circuit has considered "whether the qualifying clause in § 523(a)(3)(B), which allows creditors' actual knowledge of a bankruptcy proceeding to substitute for formal notice of the bar date, meets the requirements of due process." *GAC Enterprises, Inc., et al. v. Medaglia, et al. (In re Medaglia)*, 52 F.3d 451, 453–54 (2d Cir.1995). There, the Court began its analysis with the concept that "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Id.* at 454–55 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (further citation omitted). Just as in the present case, the *Medaglia* creditors did "not say that they had no opportunity to be heard or that they had no notice 'reasonably calculated' to apprise them of the pendency of [the debtor's case]." *Medaglia*, 52 F.3d at 454–55. Instead, like the present plaintiffs, the *Medaglia* creditors contended "that due process entitled them to a particular kind of notice, which they did not receive." *Id.* The *Medaglia* Court concluded that § 523(a)(3)(B) "imposes a burden on [creditors with timely, actual knowledge of a bankruptcy case] to come forward before the bar date." *Id.* at 455. Such a requirement does not offend due process; rather, it requires

such a creditor "to exercise due diligence and take necessary steps to preserve [the creditor's] right." *Id.* The *Medaglia* case involved a Chapter 7 debtor, and that Court did discuss the possible differences in application of § 523(a)(3)(B) to individual Chapter 7 cases and corporate reorganization cases under Chapter 11. *Id.* at 456–57. However, those differences are not determinative here because this was an individual case that resulted in a liquidation. Having knowledge of Vincent Lucchesi's bankruptcy filing, these creditors could have requested that they be scheduled as creditors so that they would receive all formal notices in the case or they easily could have determined any applicable bar dates upon simple inquiry from the debtor, debtor's counsel or the court clerk. These creditors created their own lack of formal notice. The Constitutional due process requirements are not offended in this case.

The plaintiffs also rely upon *Bratton v. The Yoder Company (In re The Yoder Company)*, 758 F.2d 1114, 1116 (6th Cir.1985), for its conclusion that "[a] creditor's knowledge that a reorganization of the debtor is taking place does not substitute for mailing notice of a bar date [to file claims]." *Yoder*, like *U.S. v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990), was a late filed claim case, not a dischargeability case. Allowance of these plaintiffs' claim, whether timely or untimely, is pointless as there were no assets or distribution available for unsecured creditors such as these plaintiffs.

The debtor's counsel argues that better authority for this case is *In re Barnes*, 969 F.2d 526 (7th Cir.1992), where that debtor intentionally omitted a friend and co-worker to whom he owed $12,000 from his Chapter 7 bankruptcy. Similar to this case, the *Barnes* debtor told his friend that he would pay him after the bankruptcy. In fact, Mr. Barnes told his friend that the debt would not be discharged. The debtor received his Chapter 7 discharge and his unsecured creditors received a distribution of five cents on the dollar. Subsequently, the omitted creditor sued the debtor in state court and the debtor responded by reopening his bankruptcy case to add the omitted debt. The *Barnes* Court

commented that the creditor "should have known that he would not receive notification of the proceeding from the court, because he would not be listed as a creditor—Barnes [the debtor] had told him he would not be." *Id.* at 528. That Court went on to conclude that the omitted creditor did not reasonably rely upon the debtor's oral promise to pay when the creditor knew that a bankruptcy was being filed and that a discharge of debt would result. Also, the creditor could not have a reasonable expectation of being paid after the discharge because all of the debtor's nonexempt assets would be sold.

■ The *Barnes* Court also considered whether the debtor's actions were fraudulent as to the omitted creditor and stated that "Barnes's promise to repay the debt in full outside of bankruptcy was a fraud on [the omitted creditor] if at the time Barnes did not intend to honor the promise." *Id.* at 529. Here, there is no indication that Vincent Lucchesi did not intend to repay his brother and sister-in-law. In fact, he still desires to voluntarily repay this debt when he is able financially.

The *Barnes* Court also considered the possible effect of such transactions on other creditors. "Section 523(a)(3)(A) is, we believe, intended for the protection of other creditors as well as the creditor whose debt is not listed." *Id.* This is so, according to that Court, because creditors must be discouraged from making special deals with the debtor that harm the creditors while giving preferential treatment to those that make special deals. Finally, that Court observed that after discharge the debtor may honor moral obligations to repay some or all of the discharged debts. "There is in that case no preexisting deal that is sought to be enforced." *Id.* at 530.

■ Obviously, if the plaintiffs in the present case had been harmed by not receiving a distribution that was paid to other unsecured creditors, different considerations would arise. But, as noted, no prejudice resulted in that no distribution was made to unsecured creditors. Also, this complaint and the proof offered in support thereof do not demonstrate any evidence of grounds to except these debts from discharge under 11 U.S.C.

§§ 523(a)(2), (4), or (6), the statutory provisions that were in effect under § 523(c) when this case was filed and on which timely complaints must have been filed within sixty days following the first date set for the § 341 meeting of creditors. FED.R.BANKR.P. 4007(c). Thus, these plaintiffs were not prejudiced by their failure to file timely such complaints.

■ However, the Bankruptcy Code also precludes a creditor who has "actual knowledge of the case" from raising dischargeability issues provided that the creditor's knowledge was obtained in time to permit the creditor to timely file a claim in an asset case and a § 523(a)(2), (4), or (6) complaint. See generally Wayne Johnson, Discharging Unscheduled Debts & Creating Equal Justice For Creditors By Restoring Integrity To Section 523(a)(3), 10 BANKR.DEV.J. 571 (1994). That article points out that "[t]he critical element of section 523(a)(3) is timeliness. The failure to schedule a debt in a timely fashion bars discharge of the debt." *Id.* at 575. However, subsections (A) and (B) create exceptions to this general rule. *Id.* at 576–581. These plaintiffs had actual knowledge that the bankruptcy case was being filed and actual knowledge within a day that it had been filed. Moreover, they continued to discuss the pending bankruptcy with the debtor. Clearly, the plaintiffs had actual knowledge in time to permit them to file a proof of claim and a § 523(c) complaint to determine dischargeability. As observed previously, the filing of a claim was unnecessary as unsecured creditors received no distribution and the plaintiffs have not suggested grounds under § 523(a)(2), (4), or (6) to except their debts from discharge.

■ The debtor, after the filing of this adversary proceeding, has moved to amend his schedules to add the debts to Louis and Margaret Lucchesi. Such relief is rather pointless as the question before the Court is whether the debts are nondischargeable under § 523(a)(3). That question involves inquiry into whether the debtor's failure to timely schedule these creditors is excused by the creditors' actual knowledge of the bankruptcy case. "Section 523(a)(3)(A) does not apply if a creditor has actual knowledge of

the case." *Id.* at 576. In like manner, § 523(a)(3)(B) does not except a debt from discharge, notwithstanding its untimely scheduling, if the "creditor had notice or actual knowledge of the case in time for such timely filing [of a proof of claim] and request [for a determination of dischargeability]." 11 U.S.C. § 523(a)(3)(B).

■ It is also unnecessary to address reopening the closed Chapter 11 case, which would cost the debtor a new case filing fee, in order then to add these creditors, as the Court concludes, based upon the particular facts of this case, that the debts to these plaintiffs have been discharged. Under Sixth Circuit authority, whether a debtor may reopen a closed case and amend to include an unscheduled creditor involves "the key inquiry [of] whether [the debtor's] failure to include [the creditor] on the original schedules of assets and liabilities has deprived [the creditor] of remedies available under the Bankruptcy Code or whether there was evidence that the exclusion was fraudulent or intentional." *Rosinski v. Boyd (In re Rosinski),* 759 F.2d 539, 541 (6th Cir.1985); *accord, Soult v. Maddox (In re Soult),* 894 F.2d 815 (6th Cir.1990). This Court has already found that these plaintiffs were not harmed by their omission from the schedules and the Court has found no fraudulent intent in the debtor's omission.

■ It is true that the omission was intentional and this at first glance appears to run counter to *Rosinski's* instruction. However, neither *Rosinski* nor *Soult* involved the creditor telling the debtor not to list that creditor in the bankruptcy. The intentional omission here was a joint decision of the debtor and the omitted creditors, and such creditors may not participate in such a decision and then ambush the debtor.

■ Finally, the plaintiffs have not sought to revoke the debtor's discharge for fraud. 11 U.S.C. § 1144(2). And, as previously observed, the Court has seen no evidence of fraud on the part of the debtor. This conclusion is not intended to excuse the debtor from his failure to comply with the Code's requirement for the filing of a "list of [all] creditors." 11 U.S.C. § 521(1). Howev-

er, such a failure does not mandate the granting of relief to these particular plaintiffs/creditors. The Court notes that if a debtor "knowingly and fraudulently" makes "a false oath" in a case, that may be grounds for denial of the general discharge under § 727(a)(4)(A), but such a complaint was not filed nor did the plaintiffs seek revocation of discharge. *See* 11 U.S.C. § 1141(d)(3)(C). In fact, the plaintiffs do not rely upon fraud; rather, they rely solely upon their failure to receive formal notices from the bankruptcy court clerk. In this particular case, the plaintiffs by their own knowledge waived the necessity of formal notice as they never expected such notice. This conclusion is peculiar to this case and is not intended by the Court to be a general ruling that formal notice of a bankruptcy case or bar dates therein is unimportant or unnecessary.

## CONCLUSION

■ The determination of this proceeding thus comes down to questions whether the intentional omission of these plaintiffs from the debtor's bankruptcy schedules was a fraud upon the omitted creditors and/or whether the omitted creditors were denied due process rights by their failure to receive actual notice of the bankruptcy filing or pertinent bar dates from the bankruptcy court clerk. Based upon the particular facts of this case, the Court does not find evidence of the debtor's intent to defraud his brother or sister-in-law. He omitted them from the bankruptcy schedules at the request of Louis Lucchesi, to whom Margaret Lucchesi had entrusted the responsibility over the subject debts. The statements by the debtor that he intended to pay them outside of or after the bankruptcy were not fraudulent because Vincent Lucchesi intended to follow through with his oral commitment to pay. However, such an oral promise is not sufficient to meet the statutory requirements for a reaffirmation of debt under § 524(c) and the debtor did not enter into a written waiver of discharge pursuant to § 1141(d)(4). Essentially, the debtor acknowledged his moral obligation and personal desire to repay his family obligations, and, as previously discussed, the Bankruptcy Code recognizes the volun-

tary repayment of debt, even after discharge. 11 U.S.C. § 524(f).

Based upon the particular facts of this case and the conclusions of law applicable to this case, the Court concludes that the debts owing to Louis and Margaret Lucchesi were discharged previously due to these creditors having actual knowledge of the bankruptcy case in sufficient time to allow their timely filing of a proof of claim and a § 523(c) complaint to determine dischargeability. As a result, the debtor's motion to amend his schedules or to allow the filing of an untimely proof of claim is unnecessary and will be denied. A separate order will be entered.