**In re Margaret J. FISHGOLD, Debtor.**

**Bankruptcy No. 96–20157.**

United States Bankruptcy Court,
W.D. New York.

March 10, 1997.

---

7. *See supra* note 1.

8. *See supra* note 1.

Stephen P. Mayka, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for Debtor.

Warren B. Rosenbaum, Rochester, NY, for David Fishgold & David Fishgold, Inc.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On January 22, 1996, Margaret J. Fishgold (the "Debtor") filed a petition initiating a Chapter 7 case. In her schedules, she listed $335,928.84 of fixed and liquidated unsecured claims and an additional disputed unsecured claim in the amount of $1,000,000 held by M & T Bank arising from a personal guaranty of the obligations of Louis Fishgold, Inc. and Fishgold Associates [1].

---

1. On April 24, 1996, M & T Bank filed an unsecured claim for $1,011,168.57.

On January 30, 1996, the Court forwarded a notice to all of the Debtor's scheduled creditors advising them that April 22, 1996 had been set as the last date to file a complaint to obtain a determination of the dischargeability of any of the Debtor's debts. Thereafter, on February 23, 1996, an amended notice was forwarded to creditors advising them that May 13, 1996 (the "Discharge Bar Date") had now been set as the last date to file such a dischargeability complaint.

On April 4, 1996, the Court forwarded an additional notice to creditors advising them that the case had become an asset case and that July 18, 1996 had been set as the last date to file a claim (the "Claims Bar Date").

On April 24, 1996, after no complaints had been filed objecting to the Debtor's discharge or requesting a determination of the dischargeability of any debt, an order was entered discharging the Debtor (the "Discharge Order").[2]

On July 30, 1996, David Fishgold ("Fishgold") and David Fishgold, Inc. ("Fishgold, Inc.") filed a joint Motion for Relief from the Stay (the "Stay Motion"). The Stay Motion requested an order allowing them to interpose a cross-claim or commence a third party action against the Debtor in a Perishable Agricultural Commodities Act ("PACA") action (the "PACA Action"), which had been commenced on August 5, 1995 and was now pending in the United States District Court for the Western District of New York (the "District Court")[3]. The Motion alleged that: (1) neither Fishgold nor Fishgold, Inc. had been scheduled by the Debtor as a creditor; (2) the original defendants in the PACA Action were Louis Fishgold, Inc., Louis N. Fishgold, the President of Louis Fishgold, Inc. and the Debtor's estranged husband ("Louis Fishgold"), and the Debtor, who had been a Vice President of Louis Fishgold, Inc.; (3) prior to March 15, 1995, when Fishgold, Inc. began its business, Fishgold had been an employee, but not an officer, director or shareholder, of Louis Fishgold, Inc.; (4) on May 31, 1996, after the Discharge Bar Date had passed, the plaintiffs in the PACA Action filed a motion (the "Fishgold Motion") which requested that they be allowed to amend their complaint to add Fishgold and Fishgold, Inc. as additional defendants; (5) the Fishgold Motion was scheduled for a hearing before the District Court on August 9, 1996; (6) upon information and belief, the Debtor had violated the PACA statute and could be found to be liable to the plaintiffs for dissipation of PACA trust assets; (7) the plaintiffs in the PACA Action had not filed proofs of claim before the Claims Bar Date or complaints to obtain a determination of the dischargeability of any PACA liability which the Debtor might have to them, so the Debtor's liability had been discharged; and (8) should the District Court permit Fishgold and Fishgold, Inc. to be added as additional defendants in the PACA Action and the plaintiffs ultimately recover a judgment against Fishgold and/or Fishgold, Inc. in that Action, upon information and belief, Fishgold and Fishgold, Inc. would have a claim over against the Debtor (a "Contribution Claim") because of her dissipation of trust assets.

On July 30, 1996, Fishgold and Fishgold, Inc. also filed a motion (the "Dischargeability Motion") requesting that the Court extend their time to file a Complaint to determine the dischargeability of any Contribution Claim which they might have against the Debtor. The Dischargeability Motion alleged that: (1) since neither Fishgold nor Fishgold, Inc. had been scheduled by the Debtor as a creditor, they had received none of the notices regarding the Debtor's bankruptcy case, including the notice setting the Discharge Bar Date; (2) prior to May 31, 1996 when the plaintiffs in the PACA Action filed the Fishgold Motion, Fishgold and Fishgold, Inc. had no reason to believe that they were creditors or even potential creditors of the Debtor by reason of a possible Contribution Claim arising out of the PACA Action,

---

**2.** The Court's records indicate that between April 22, 1996 and May 13, 1996, no complaints were filed objecting to the Debtor's discharge or requesting a determination of the dischargeability of any debt.

**3.** On July 18, 1996, Fishgold, Inc. filed a proof of claim for $1,750,000, based upon "Indemnification and/or contribution by reason of breach of fiduciary duties by debtor" (the "Fishgold, Inc. Claim"). Fishgold did not file a proof of claim before the expiration of the Claims Bar Date.

since neither the PACA Claimants nor the Debtor had asserted any PACA claims against them, formally in the PACA Action or otherwise; (3) although before the Bar Date, Fishgold and Fishgold, Inc. may have had actual knowledge that the Debtor had filed bankruptcy, because Fishgold nor Fishgold, Inc. had no reason to believe that they were creditors of the Debtor, the provisions of Section 523(a)(3)(B) [4] should not be applied to bar Fishgold and Fishgold, Inc. from having any Contribution Claim determined to be nondischargeable pursuant to Section 523(a)(4) [5]; (4) notwithstanding that her liability to the PACA Claimants had been technically discharged in her bankruptcy case because of the inaction of the Claimants, if the Debtor was found by the District Court to be liable in the PACA Action for the dissipation of trust assets, such a liability would constitute a debt for defalcation while acting in a fiduciary capacity, and any Contribution Claim that Fishgold and Fishgold, Inc. might have against the Debtor would also be a debt for defalcation while acting in a fiduciary capacity, and thus nondischargeable pursuant to Section 523(a)(4).

On the August 14, 1996 return date of the Stay Motion and the Dischargeability Motion, the Court adjourned the Motions until such time as the District Court determined whether to grant the Fishgold Motion. On November 8, 1996, the attorney for Fishgold and Fishgold, Inc. advised the Court that the District Court had granted the Fishgold Motion and permitted the plaintiffs in the PACA Action to amend their complaint to add Fishgold and Fishgold, Inc. as additional defendants.

In her various Responses to the Stay Motion and the Dischargeability Motion, the Debtor alleged that: (1) the United States Department of Agriculture (the "USDA"), as evidenced by an attached March 13, 1996 letter, had determined that, ".... Margaret J. Fishgold, was not responsibly connected with Louis Fishgold, Inc., when it violated the PACA"; (2) Louis Fishgold and Fishgold are brothers; (3) Fishgold worked at Louis Fishgold, Inc. with the Debtor and his brother for over fifteen years, and Louis Fishgold now worked with Fishgold in Fishgold, Inc. and related ventures; (4) since 1994 the Debtor and Louis Fishgold had been involved in a heated matrimonial action, and in that action Louis Fishgold had obtained a May 10, 1994 order (the "Protective Order") barring the Debtor from active participation in Louis Fishgold, Inc.; (5) when Louis Fishgold, Inc. closed its doors in March, 1995, Fishgold and Fishgold, Inc. immediately began servicing virtually all of the large customers of Louis Fishgold, Inc. while: (a) operating out of a building adjacent to the former business location of Louis Fishgold, Inc.; (b) employing many of the same individuals that had been employed by Louis Fishgold, Inc.; and (c) utilizing, after purchase, virtually all of the equipment previously used by Louis Fishgold, Inc.; (6) in the amended complaint filed in the PACA Action, the causes of action asserted against Fishgold and Fishgold, Inc. were specific, and were limited to the receipt of trust assets from Louis Fishgold, Inc. without providing full and fair value; (7) upon information and belief, for Fishgold or Fishgold, Inc. to have a claim over against the Debtor, they would have to show that not only did the Debtor receive PACA trust assets from Louis Fishgold, Inc., but that she then transferred them to Fishgold and Fishgold, Inc. without receiving full and fair value

4. Section 523(a)(3)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

5. Section 523(a)(4) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

for Louis Fishgold, Inc.; (8) the PACA claims at issue in the PACA Action arose between October, 1994 and March, 1995, a time when because of the Protective Order the Debtor was no longer actively involved in the business of Louis Fishgold, Inc.; (9) after May 10, 1994, the Debtor was not involved in any transfers of any of the assets of Louis Fishgold, Inc. to Fishgold or Fishgold, Inc.; (10) the Fishgold Motion alleged that, because of the Debtor's matrimonial action against him, Louis Fishgold had been determined to prevent the Debtor from receiving any value from Louis Fishgold, Inc., he had extracted as much cash as possible from the corporation without reporting it on the corporation's books and had transferred its business and business assets to Fishgold and Fishgold, Inc. without any reportable compensation; (11) based upon the above, should Fishgold and Fishgold, Inc. be held liable in the PACA Action, it is unlikely that they would prevail on any Contribution Claim; (12) the Debtor should not be required to answer for an indirect liability arising out of the same transactions where she has been discharged from any direct liability by her bankruptcy; (13) even though the Debtor had not scheduled Fishgold and Fishgold, Inc. as creditors, since they had actual knowledge of the bankruptcy and, therefore, could have filed a complaint to request a determination of the dischargeability of any Contribution Claim before the Discharge Bar Date, there is no basis for the Court to now extend the Discharge Bar Date to allow them to file such a complaint; and (14) even if Fishgold and Fishgold, Inc. were ultimately found to have a Contribution Claim against the Debtor in the PACA Action, the Court could not and should not find it to be a nondischargeable claim pursuant to Section 523(a)(4), since: (a) such a finding of nondischargeability requires that there be a debt for fraud or defalcation while acting in a fiduciary capacity; (b) courts have required the fiduciary capacity to be between the debtor, as the fiduciary, and the creditor, as the beneficiary; and (c) the Debtor was never acting in any fiduciary capacity with respect to Fishgold or Fishgold, Inc. concern-ing the matters which are the subject of the PACA Action.

## DISCUSSION

For the reasons set forth below: (1) the Court will deny the Stay Motion as to Fishgold but, in the interests of judicial economy, will grant the Motion as to Fishgold, Inc. so that, if it deems it advisable, it can bring a third party complaint or cross-claim against the Debtor in the PACA Action [6] to have the Fishgold, Inc. Claim determined, and if found to valid, fixed and liquidated, rather than having it determined in this Court pursuant to Section 502(b), or estimated pursuant to Section 502(c); and (2) the Court will deny the Dischargeability Motion.

### I. *The Section 362(d) Motion*

Section 362(d) permits the Court, in its discretion, on the request of a party in interest, and after notice and a hearing, to grant relief from the automatic stay for cause.

Fishgold has not filed a proof of claim in the Debtor's bankruptcy, but Fishgold, Inc. did timely file a Contribution Claim. Clearly the Debtor disputes this claim, and the Debtor or her Trustee might otherwise file an objection to the Claim. If it were ultimately determined that Fishgold, Inc. had a valid Contribution Claim, the amount of the Claim would also have to be determined so that Fishgold, Inc. could share in any distribution in the Debtor's asset Chapter 7 case. Given that the PACA Action is pending in the District Court which has allowed the Plaintiff's Complaint to be amended to include Fishgold, Inc. as an additional defendant, in the interests of judicial economy, the determination of whether and in what amount Fishgold, Inc. may have a valid Contribution Claim can best be made by the District Court in that Action.

The Court is aware that Fishgold, Inc. may elect not to pursue a Contribution Claim given that: (1) the non-exempt assets in the Debtor's estate probably will not exceed $10,-000; (2) over $1,350,000 in unsecured claims have been filed in the Debtor's case, and

---

**6.** The Court has been advised that there was a motion to dismiss the PACA Action as against the Debtor, but it is not certain whether the motion has been granted by the District Court.

neither the Debtor nor the Debtor's Trustee has objected to those claims; (3) this Court has determined that any Contribution Claim would be dischargeable; (4) the USDA found that the Debtor had not violated the PACA statute; (5) the District Court consistently enforces the provisions of Rule 11 of the Federal Rules of Civil Procedure when appropriate; (6) the costs and expenses that Fishgold, Inc. would certainly incur in prosecuting a Contribution Claim in the PACA Action would be substantial when compared with any distribution it might receive in the Debtor's bankruptcy case, and therefore, its motives in prosecuting the Claim might be questioned; and (7) if the specific causes of action alleged against Fishgold and Fishgold, Inc. are in fact simply causes of action for the knowing receipt of fraudulent conveyances, rather than causes of action for the dissipation or knowing receipt of PACA trust assets, there may be no valid Contribution Claim.

Given all of the facts and circumstances of this case, however, the Court believes that sufficient cause exists to modify the automatic stay to allow Fishgold, Inc. the ability to pursue a Contribution Claim. However, since Fishgold did not file a proof of claim before the Claims Bar Date and this Court has determined that any such Contribution Claim would be dischargeable, there is no cause to modify the stay to allow Fishgold to pursue such a Contribution Claim.

## II. Section 523(a)(4)—Exceptions to Discharge for Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity

■ Fishgold and Fishgold, Inc. have asserted that Section 523(a)(4) permits a wrongdoer who has breached its duty to a third party while acting in a fiduciary capacity to prevail by reason of a Contribution Claim against a wrongdoing debtor who has also breached its duty to that same third party while acting in the same fiduciary capacity.

■ I agree with contentions of the Debtor that the relief provided under Section 523(a)(4) is available only to creditors where the debtor committed fraud or defalcation while acting in a fiduciary capacity with respect to that creditor. At no time did the Debtor, under the facts and circumstances asserted by Fishgold and Fishgold, Inc., have a fiduciary duty, by reason of an expressed or technical trust, to Fishgold or Fishgold, Inc. The Court in *In re Griffin*, 111 B.R. 42 (Bankr.W.D.N.Y.1990) held that only the intended beneficiary of a trust, such as a PACA Trust at issue here, could be granted the relief afforded by Section 523(a)(4). I agree with that interpretation of Section 523(a)(4).

Furthermore, to allow an entity found to have committed fraud or defalcation while acting in a fiduciary capacity, even if there was a technical trust involved and the actions were not intentional, to utilize and obtain relief under the provisions of Section 523(a)(4) would be inequitable, generally against public policy, and not in furtherance of the specific policies and interests of the Bankruptcy Code and the Bankruptcy System. The balancing in Section 523(a)(4) of the policies of fresh start and protecting an innocent but wronged creditor would not be served by rewarding a wrongdoer once the innocent creditor that Section 523(a)(4) was meant to protect has been made whole. At that point, the fundamental policy of fresh start must prevail.

## III. Section 523(a)(3)—Unscheduled Creditors with Actual Knowledge [7]

As correctly pointed out by the Debtor, the law is clear in the Second Circuit that unscheduled creditors who have actual knowledge of a bankruptcy proceeding in time to

---

7. The parties had requested that the Court determine the Section 523(a)(4) legal issue first, and then, if it determined that a valid Contribution Claim could be nondischargeable, the Court next determine whether, since Fishgold, Inc. had actual knowledge of the Debtor's bankruptcy, the Court could extend the Claims Bar Date if there was a question of fact as to whether Fishgold, Inc. had reasonable cause to believe that it was a creditor before the Claims Bar Date. Even though the Court has determined that a Contribution Claim in these circumstances would be dischargeable, it will decide the Section 523(a)(3) issue in the event the movants appeal the Section 523(a)(4) determination.

bring a complaint to have their debt determined to be nondischargeable pursuant to Section 523(a)(4), (6) or (8), are barred from bringing such a complaint, even though they were not scheduled as a creditor and did not receive any of the notices in the bankruptcy case, including a bar date notice for the filing of such a complaint, *see In re Medaglia*, 52 F.3d 451 (2d Cir.1995).

■ Even though this and many other courts have held that the time for bringing a complaint to determine the dischargeability of any debt is the equivalent of a statute of limitations which should be strictly construed[8], where an unscheduled entity has actual knowledge of a Debtor's bankruptcy, but does not have reasonable cause to believe that it has a claim against the Debtor, and it is only as the result of information obtained or facts and circumstances occurring after the bar date for the filing of complaints that the entity first becomes aware of a possible claim against the Debtor, I believe that it would be a denial of fundamental due process for Section 523(a)(3)(B) to bar that entity from having an opportunity to file a complaint to have such a now discovered possible claim determined to be nondischargeable if it is one that could otherwise be determined to be nondischargeable under Section 523(a)(2), (4) or (6).

In such an admittedly extremely rare fact situation where there could be found to be such a denial of fundamental due process, the Court should exercise its powers under Section 105 to extend the time to allow such an entity to file a complaint.

The United States Court of Appeals for the Second Circuit stated in *In re Medaglia*, 52 F.3d 451, 455 (2d Cir.1995) that, " . . . it is well established that due process is not affected by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right."

■ In a case where a person does not know or have reasonable cause to believe that it has a right which could be affected by an event, the mere knowledge of that event (in this case the Debtor's bankruptcy) is not the kind of actual and timely notice necessary to expect a person to exercise due diligence to preserve that unknown right. Such a person would not have been afforded the fundamental due process which the U.S. Constitution guarantees him.

■ It has been alleged by Fishgold and Fishgold, Inc. that prior to the Discharge Bar Date the Debtor met with the attorneys for the PACA claimants and became aware that they intended to make motions in the PACA Action to: (1) amend their complaint to include Fishgold and Fishgold, Inc. as additional defendants; and (2) have the complaint dismissed against the Debtor, if she cooperated with the PACA Claimants in pursuing their causes of action against Fishgold and Fishgold, Inc. If that was the case and the Debtor or her representatives could have reasonably anticipated that this might ultimately result in Fishgold or Fishgold, Inc. pursuing a Contribution Claim against her, the Debtor had an obligation, pursuant to Section 521(1)[9], to amend her schedules and include Fishgold and Fishgold, Inc. as additional creditors, no matter how meritless the Contribution Claim may have appeared to her to be. Clearly, if she intentionally failed to schedule Fishgold and Fishgold, Inc. as creditors in order to deprive them of the opportunity to exercise due diligence and protect any possible nondischargeability claim they might have, that itself might constitute a denial of fundamental due process. *See In re Lucchesi*, 181 B.R. 922 (Bankr. W.D.Tenn.1995).

However, at the time of the filing of her petition and at all times before the Discharge Bar Date the Debtor and her representatives claim not to have had reasonable cause to believe that Fishgold and Fishgold, Inc. could have been a creditor, and therefore,

8. *See Manufacturers Hanover Trust v. Shelton (In re Shelton)*, 58 B.R. 746 (Bankr.N.D.Ill.1989).

9. Section 521(1) provides:
The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.

she did not include them on her schedules. Presumably this is because of one or more of the following: (1) the PACA Claimants had not attempted to join them as additional defendants in the Action or otherwise allege that they might be liable to the claimants under the PACA statute; (2) the Debtor and her representatives believed she had no PACA liability; and (3) the Debtor and her representatives could not have reasonably anticipated that, if Fishgold or Fishgold, Inc. were ultimately joined as additional defendants in the PACA Action, they would assert a claim over against the Debtor.

■ Whether the Debtor intentionally and wrongfully failed to schedule Fishgold and Fishgold, Inc. as creditors and whether they had reasonable cause to believe that they were potential creditors of the Debtor prior to the Discharge Bar Date are questions of fact which would have to be determined after an evidentiary hearing.

Some of the many facts and circumstances in this case which would require further inquiry at such an evidentiary hearing would include: (1) even though the PACA Claimants had commenced the PACA Action in August of 1995, why in over eight months had they still not attempted to amend their complaint to add Fishgold and Fishgold, Inc. as additional defendants; (2) in that same eight-month period while the PACA Action was pending, did the PACA Claimants even informally assert a PACA claim against Fishgold or Fishgold, Inc.; (3) unlike in this case, it is this Court's experience that PACA claimants once they commence a PACA action are very aggressive and thorough in prosecuting such actions, especially when, as in this case, the action includes multiple claimants and claims of in excess of $1,000,-000; (4) the activities of Fishgold and Fishgold, Inc. as they relate to the former business and assets of Louis Fishgold, Inc. were open and notorious since April, 1995 to anybody in the business and to the general public [10]; (5) was the timing of the motion of the PACA Claimants' to amend so shortly after the passage of the Discharge Bar Date

simply coincidental; (6) did Fishgold and Fishgold, Inc. know that the Debtor was a defendant in the PACA Action; (7) did Fishgold and Fishgold, Inc. know that there were unpaid PACA Claimants of Louis Fishgold, Inc.; (8) did Fishgold and Fishgold, Inc. expect to be added as defendants in the PACA Action given that they did know that: (a) they had acquired a substantial portion of the business and assets of Fishgold, Inc.; (b) the PACA Claimants would be scrutinizing the relationship between Louis Fishgold, Inc. and Fishgold and Fishgold, Inc.; and (c) the PACA Claimants might ultimately attempt to add them as additional defendants in the PACA Action; (9) if Fishgold and Fishgold, Inc. realized that they might be added as defendants in the PACA Action, didn't they immediately begin to analyze the viability of cross-claims against co-defendants, including the Debtor; and (10) in view of the heated matrimonial action involving the Debtor and Louis Fishgold, if given the opportunity, wasn't there an additional incentive for Fishgold and Fishgold, Inc. to embroil the Debtor in additional and expensive litigation.

### CONCLUSION

The Stay Motion is in all respects denied as to Fishgold but, in the interests of judicial economy, is granted as to Fishgold, Inc. The Dischargeability Motion is in all respects denied.

**IT IS SO ORDERED.**

---

**10.** Tractor-trailer trucks formerly owned by Louis Fishgold, Inc. could be seen driving all around town with the word "Louis" painted out and the word "David" poorly and hastily substituted.